JEROME TAYLOR et al., executors &c.,

*v.*

HELEN TOLEN et al.

1. Where a legatee can be identified, a misnomer will not defeat his bequest, as where legacies were given to testator's nephews, Harmon Baldwin and Joseph Baldwin, he having a nephew Samuel Harbourne Baldwin, who is usually called "Harbourne," and a nephew Josiah M. Baldwin, usually called "Josie;" and so of partial mistakes in the titles of corporation legatees.

2. A provision that testator's homestead and its contents be left undisturbed during the lifetime of Mrs. C. for her occupancy and use, and that the executors pay Mrs. T. $10 per week for supplying the table of that house until January 1st, 1883, ceased on Mrs. C.'s death in April, 1882, and Mrs. T.'s removal from the house in July, 1882.

3. Gifts to two churches, on condition that "the whole debt shall be removed," do not require that those debts must be discharged independently of and before their respective legacies are paid; but the legacies may be used toward payment of the debts.

4. A legacy of $2,500 to pay the debt on a chapel, which amounted to about $2,100, and which testator himself paid after the making of his will, is thereby adeemed.

5. A gift "to the Rochester, N. Y., Theological Seminary, and to Hamilton Theological Seminary, $10,000," is a gift of that amount to each.

6. That testator's personal estate was known by him to be insufficient to pay all the legacies given in his will; that he requested his executors, at the beginning of the will, "to carry out the provisions of the will as executors;"

Taylor *v.* Tolen.

that he directed that his homestead and the furniture therein be left undis-
turbed during the lifetime of a designated beneficiary ; that the will contains
no residuary clause, and that nearly all of the legacies are charities—*Held*,
not to be sufficient evidence of an intention to charge the legacies on the
lands undisposed of by the will.

Bill for construction of will.  On final hearing on pleadings
and proofs.

*Mr. C. S. Titsworth*, for complainants.

*Mr. W. S. Gummere*, for defendants Silvers and Belcher and
Samuel O., Herbert B., Samuel H. and Josiah M. Baldwin.

*Mr. S. Morrow, Jr.*, for Josiah L. Baldwin.

*Mr. F. S. Fish*, for Helen Tolen and Madison University and
other corporation legatees.

*Messrs. E. A. & W. T. Day*, for American Baptist Missionary
Union and other corporation legatees.

THE CHANCELLOR.

Harris M. Baldwin, deceased, late of Newark, died January
9th, 1882, leaving a will dated September 12th, 1881.  By that
instrument he first states that he " makes it as his will and
requests his good friends, Jerome Taylor and Henry S. Tolen,

NOTE.—Under a gift *to and amongst* the children of A and B, they take as
tenants in common ; but under a gift *to* the children of A and B they take as
joint tenants, *2 Jarm. on Wills* \*253, \*394, notes ; *Campbell* v. *Campbell, 4 Bro.
C. C.,15 ; Morley* v. *Bird, 3 Ves. 629 ; Noe* v. *Miller, 4 Stew. Eq. 234.*

In *Telfair* v. *Howe, 3 Rich. Eq. 235*, under a residuary gift " to the American
Bible Society of New York, and to the American Missionary Society of New
York," the former having been shown to be a body corporate and the latter
never to have existed—*Held*, that the former was entitled to a moiety of the
residue only, because a corporation cannot take an estate in joint tenancy,
either with another corporation or with a natural person, and therefore testa-
trix's next of kin took the other moiety.  See *Catholic Church* v. *Offutt, 6 B.
Mon. 535.*

Taylor v. Tolen.

to carry out its provisions as executors." He then directs that the house in Newark which he then occupied, with the furniture it contained, be left undisturbed during the life of his mother-in-law, Mrs. Experience Camp, for her occupancy and use, and directs his executors to pay to Mrs. Helen Tolen $10 per week for supplying the table of that house, until the 1st day of January, 1883. He then gives to his nephews and nieces, Louisa Silvers, Genevieve, Annie and Joseph Belcher, Herbert, "Harmon" and "Joseph" Baldwin, $3,000 each; to the "South Baptist Church of Kinney street," $5,000 as a fund, the income of which shall be used to meet the current expenses of the church; to the "Fairmount Baptist Church," $2,500, on condition that the whole debt shall be removed; to the "Fifth Baptist Church," $1,000, "on the same condition;" to the "Newark City Mission," $2,500, "to pay the debt on Belmont Avenue Chapel;" to the "New Jersey Baptist State Convention," $1,000; to the "New Jersey Baptist Education Society," $500, and to the "Ministers' Fund of the East New Jersey Baptist Association," $500; to the "American Baptist Missionary Union," $10,000; to the "American Baptist Home Mission Society," $5,000; to the "American Bublication Society," $5,000; to the "Rochester, New York, Theological Seminary and to the Hamilton Theological Seminary, $10,000." His executors ask for a construction of the will as to some of the legacies, their validity &c., and whether the legacies are charged on the real estate.

The testator gives to his nephews and nieces, Louisa Silvers, Genevieve, Annie and Joseph Belcher and Herbert, Harmon

In *Decamp* v. *Hall, 42 Vt. 483*, a testator provided as follows: "I give and bequeath to my son John the use of $475 during his natural life, and after his decease I bequeath said legacy of $475 to his sons George and Leander." Leander died after the testator and before his father, John.—*Held*, that George took the whole $475 by survivorship.

In *Trigg* v. *King, 1 Rand. 252*, the bequest was "to my nieces E. F. and E. M. ten thousand dollars in twelve months after marriage, provided they are then eighteen years of age; if not, at the age of eighteen."—*Held*, that while the language would import a joint interest, i. e., $5,000 to each, yet the improbability that they would marry at the same time, or arrive at the age of eighteen at the same period, controlled the gift and made each niece entitled to $10,000.—Rep.

and Joseph Baldwin, $3,000. He had no nephew by the name of Harmon Baldwin nor any by the name of Joseph Baldwin. But he had a nephew by the name of Samuel Harbourne Baldwin, who is usually called by his middle name, Harbourne. He had a nephew (brother of the last-mentioned one) by the name of Josiah M. Baldwin, who usually goes by the name of " Josie." There can be no doubt that they are the persons meant by the gifts to " Harmon " and " Joseph."

The gift to the " South Baptist Church of Kinney street " was intended for the religious corporation in Newark (a Baptist church) named " South Baptist Church, Kinney street." The testator was a member and deacon of that church for many years prior to his death.

By the " Fairmount Baptist church " he meant the church in Newark whose corporate name is, " Fairmount Baptist Church of the city of Newark, in the county of Essex and State of New Jersey." He was interested in that church, and contributed to the building of its church edifice. It is commonly known by the name by which he designates it. The legacy to the " Fifth Baptist Church " was intended for the church in Newark whose corporate name is, " The Fifth Baptist Church of the city of Newark, in the county of Essex and State of New Jersey." The testator was interested in that church also, and contributed to its funds. According to the testimony, he gave the lot on which its church edifice was built. The gift to the " Newark City Mission" was intended for the religious corporation in Newark named " Baptist City Mission." The testator was very much interested in that corporation and its objects, and contributed to its funds. Among its objects was the support of a chapel which it owned, known as the " Belmont Avenue Chapel."

The testator gives a legacy to " the ministers' fund of the East N. Jersey Baptist Association." The East New Jersey Baptist Association is a corporation by that name, and it has established a fund for the relief of disabled ministers and ministers' widows. There can be no doubt that the gift was intended for that corporation, to be placed by it in that fund. In *N. Y. Annual Conference &c.* v. *Clarkson's Exrs.*, *4 Hal. Ch.*

Taylor *v.* Tolen.

*541,* it was held that a bequest to the "New York Methodist Conference Society for the support of old worn-out preachers," was intended for the New York Annual Conference Ministers' Mutual Assistance Society, and it was decreed that it be paid over accordingly. In *Smith's Exrx.* v. *First Presb. Ch., 11 C. E. Gr. 132,* it was held that a bequest to the board of ministerial relief of the Presbyterian Church in the United States of America, was intended for, and should go to, the trustees of the general assembly of the Presbyterian Church in the United States of America, for the use of the fund for disabled ministers and their families. In *Mason's Exrs.* v. *Trustees &c., 12 C. E. Gr. 47,* gifts to the Sunday-schools of two churches, for certain specified purposes, were ordered paid over to the respective churches, in trust for those purposes.

The bequest to the "American *B*ublication Society" was undoubtedly intended for the American Baptist Publication Society. The testator probably intended to write the latter name, but accidentally wrote only part of each of the words Baptist and Publication, joining them together. He was very friendly to the American Baptist Publication Society, and was a contributor to its funds.

The bequests to the "Rochester, N. Y., Theological Seminary" and the "Hamilton Theological Seminary" were intended, the one for the New York Baptist Union for Ministerial Education (a corporation under the laws of the state of New York, and located in the city of Rochester, in that state), and the other for Madison University, a corporation located at Hamilton, in that state. The former has established and owns a theological seminary in Rochester, commonly known by the name of the Rochester, N. Y., Theological Seminary. It is the only theological seminary in the city of Rochester. Connected with the Madison University is a theological seminary of the Baptist denomination (the only theological seminary in Hamilton), commonly called the Hamilton Theological Seminary. What is now known as Madison University was, from 1822 to 1846, when it was incorporated by the name of Madison University, known as the Hamilton Literary and Theological Seminary.

Taylor *v.* Tolen.

The direction is to the executors to pay Mrs. Tolen $10 a week, for supplying the table of the testator's house, up to the 1st of January, 1883. This was intended as a provision for the wants of the testator's mother-in-law and Mrs. Tolen, up to that date. But the former died April 19th, 1882, and in or about July following, the latter removed from the house and underlet the property for a nominal rent. Where a testator leaves a legacy absolutely, as regards his estate, but restricts the legatee's mode of enjoying it, to secure certain objects for the benefit of the legatee, upon failure of such objects, the absolute gift prevails. But if there is no absolute gift as between the legatee and the estate, but a particular mode of enjoyment is prescribed, and that mode fails, the legacy forms part of the testator's estate, as not having, in such case, been given away from it. *Wms. on Ex. 1288.* Here the gift is not absolute to the legatee, but it is a mere direction to the executors to pay her certain money for a certain purpose. The object ceased when she vacated the house, and she is not entitled to the payments for any time subsequent thereto.

The gift to the Fairmount Baptist Church and the Fifth Baptist Church are on condition that " the whole debt shall be removed," and the question is asked whether the payment of the entire debt of the church is a condition precedent to the payment of the legacy. It is not. The testator does not impose the condition that the debt shall be paid in full before the legacy is payable, but makes the gift on condition that *the whole* of the debt shall be removed. He does not prohibit the use of the legacy towards paying the debt. Nor does he designate any purpose to which it is to be applied. He appears to have contemplated that it would be used toward paying the debt, and to have intended that it should not go to the church unless the church should have paid all of the debt except so much as the bequest would pay. His object was thus to secure the payment of the entire debt. The churches should each be required to raise the money to pay all of its debt, except the amount of the legacy, within a reasonable time. Sixty days will be a reasonable period.

The testator gives to the City Mission $2,500 to pay the debt

Taylor *v.* Tolen.

on Belmont Avenue Chapel. After the making of the will he himself paid off the debt, which was about $2,100. If a testator who has given, by his will, a legacy for a specified particular purpose, himself afterwards executes the purpose in his lifetime, he is presumed to have intended to cancel the legacy, which is held to be adeemed. *Gres. Eq. Ev. 298; Rop. on Leg. 381.* Here the legacy was given expressly to pay the debt, and the testator himself afterwards paid off the debt. The bequest, therefore, must be held to be wholly adeemed or satisfied.

The will gives " to the Rochester, N. Y., Theological Seminary " and to " Hamilton Theological Seminary $10,000," and a question is raised on this bequest whether the legacy is of $10,000 to both, or of that sum to each. It is of $10,000 to each and not of that sum to the two. The testator does not say, I give to the two $10,000, but to one, and [also] to the other that sum.

It remains to consider the question whether the legacies are charged on the land. The rule on the subject is familiar. Personal estate is the primary fund out of which legacies are payable, and the real estate is not charged with the payment of them unless the testator intended it, and that intention must be either expressly declared or fairly and satisfactorily inferable from the language and dispositions of the will. Here there is no express declaration of such an intention. It is urged, however, that it is to be inferred from the fact that the testator's personal estate was, and was known to him to be, insufficient to pay the legacies, and hence it is argued that he must have intended that the real estate should be charged therewith; that he requests his executors to " carry out the provisions of the will as executors; " thus, it is said, making it incumbent on them to pay the legacies, and giving them power over all his estate for the purpose; that he directs that his house and the furniture therein be left undisturbed during the life of his mother-in-law, thus showing, it is insisted, that he intended that his executors should have control over his real property; and, further, that the will contains no residuary clause, from which it is argued that he intended that all his estate should be devoted to the payment of the legacies.

It is also urged that the character of the bequests indicates his intention to charge them on the land.

The legacies, not including anything on account of the direction to pay Mrs. Tolen for supporting the table, or the $2,500 for the Newark City Mission, and reckoning the gifts to the two theological seminaries at $20,000, amount to $71,500, while the personal estate amounts to only $50,048.53. The real estate is valued at about $25,000 altogether. It appears from the testimony that in the latter part of June or 1st of July, 1881, about six months before the will under consideration was executed, the testator made a will, which he afterwards destroyed, in which he gave the same legacies to the same legatees, with one exception. The legacies amounted altogether to the sum of about $75,000. At that time, he had a memorandum of his personal and real estate, with the value thereof, which was about $90,000, reckoning his real estate at $35,000, and he said that the property would pay the legacies and leave a " leeway," as he called it, of about $10,000. That memorandum is not produced; it cannot be found. The testator does not appear to have had it or to have referred to it when the last will was executed. The most that is to be said on this point is that he may have been, and probably was when he made his will, aware of the fact that his personal estate would not be sufficient to pay the legacies. His request to his executors, at the beginning of the will, " to carry out the provisions of the will as executors " is of no significance. It is a mere request that they would act as executors. Nor is there in the fact that he directs that his house and furniture remain undisturbed during the lifetime of his mother-in-law, any evidence of his intention to charge the land with the legacies. He does not thereby confer any power on his executors over his real estate. The provision gives to the mother-in-law the use of the house and furniture for life. He neither directly nor indirectly gives the executors any power to dispose of his real estate, nor any control over it. That the will contains no residuary clause is not evidence of an intention to charge the land with the legacies. Nor is there any evidence of it in the character of the legacies, that they are almost entirely charitable.

Taylor v. Tolen.

In *Leigh* v. *Savidge, 1 McCart. 124*, some of the circumstances which are urged in this case combined, but in greater force, to show that the testator intended to charge the legacies on the land, but they were held to be insufficient. There the testator, who had no descendants and no inheritable blood, gave legacies which amounted, as he knew, to over $2,000 more than his personal estate. He gave a house and lot to his wife for life, directing that at her death it should be sold and the proceeds of sale divided among four legatees whom he named. He had four other parcels of land, containing over fifty-five acres, of which he made neither disposition nor even mention in the will. After the will was written, and before it was executed, he requested the scrivener who drew it and who was one of the witnesses, to run over the addition which he (the testator) had made of the amounts of the legacies to see if it had been correctly made. At the same time, he had in his hand a memorandum containing the names of the legatees and the amounts of their respective legacies. On it he had set down his personal property with a valuation thereof, and the number of acres of his real estate, not including what was given to his widow, with a valuation thereof. He asked the scrivener's opinion as to the valuation of the land, whether he, the testator, had put it too high. The scrivener told him No, that the land was worth that amount at that time, and that the amount of the valuation of his estate, real and personal, not including what was given to his widow, overbalanced the amount of the legacies by some $200 or $300, which, the testator said, would pay the expenses of settling the estate. The personal property in the memorandum was not sufficient by about $2,000 to pay the legacies, and the real estate therein was valued at about that sum. The testator's object in making the valuation of the real estate was to see if he had property enough to pay the legacies. He said he did not want to will away more than he had property to pay. He also said that the real estate which he had mentioned (that which was in the memorandum) would have to be sold, and he wanted to know if he had overvalued it. The scrivener also testified that he sup-

posed that an expression at the close of the will, "giving the executors all power necessary to execute that ample trust," authorized the executors to sell the real estate, which was the desire and intention of the testator, and that had he not so supposed he would have endeavored to express the wishes of the testator more distinctly, and would have mentioned the fact to him.    There the testator "invested his executors with all power necessary to execute that ample trust," and this investiture was at the close of the instrument, while here there is a simple request, not at the end but in the beginning of the will and before making any disposition of his property, that the executors will "carry out the provisions of the will as executors."  There the testator, when he made his will, had a memorandum of his estate, both real and personal, and compared the amount of the valuation thereof with the amount of the legacies, while here he had no such memorandum and made no such comparison when he made the will, though he had such a memorandum and made such a comparison when he made a former will six months previously.    There, as here, there was no residuary clause. There, as here, the testator left part of his real property undisposed of by any devise.    It was held in that case, that as against heirs the legacies would not be held to be chargeable on the land, but as against the state they were.    The testator in that case, as before stated, had no descendants and no heritable blood, and there was, therefore, no one to whom in case of intestacy his real estate could descend, and the land must escheat to the state.    In *White* v. *Olden, 3 Gr. Ch. 343*, the testator, after numerous legacies, gave all the remainder of his estate, both real and personal, after payment of all his just debts and the expense of executing his will, to his four cousins.    The character of the legacies, which the chancellor said were of no ordinary character, were objects of affection and charity, near the testator's heart and evidently the principal and grand objects he had in view (the testator there, as here, left no descendants), tended strongly to the decision that the testator intended to charge the legacies on his real estate, and this court so decreed, but the decree was reversed (*Olden* v. *White, 1 Hal. Ch. 629*) by the court of

errors and appeals, as appears by a note to the report of the case. In *Massaker* v. *Massaker, 2 Beas. 264,* the testator, when he made his will, had no personal estate to pay the legacies, but had real estate not devised or mentioned in the will. It was held that the legacies were not charged on the land. Said the court in *Johnson* v. *Poulson, 5 Stew. Eq. 390 :* "Such, however, is the presumption against a charge, unless distinctly imposed, that though the insufficiency of the personal estate to pay legacies when so made to appear creates a strong impression in favor of an intention to charge them, yet standing alone it is not enough as against heirs to effect such a charge." In this case there is, in fact, nothing except such insufficiency in favor of the charge. The land is not liable for the payment of the legacies.