Read v. Patterson.

Thomas H. Read, appellant,

*v.*

Charles E. Patterson et al., respondents.

1. In a suit by a creditor or a specific legatee for satisfaction of a debt or legacy out of the assets of the estate, residuary legatees, being interested conse-quentially only, need not be made parties. But where the suit involves the construction and effect of the residuary clause in the will, the residuary lega-tees, being directly interested, are necessary parties.

2. A rehearing being simply a new hearing and a new consideration of the case by the court which heard it originally, and upon the pleadings and depositions already in the case, an order denying an application for a rehearing is not an appealable order.

3. But an order denying an application to open a decree, and for leave to answer and present the merits of the defence, on the ground that the solicitor who appeared for the defendant was not authorized to appear for him, and that the case was heard upon a stipulation admitting the allegations of the bill, given by such solicitor without the defendant's knowledge or consent, is an appealable order.

4. Where a power is coupled with a trust or duty, a court of equity will enforce a proper and timely exercise of the power; but if it be given upon a trust to be exercised in the discretion or upon the judgment of the trustee, the court will not interfere with the trustee's discretion in executing the trust unless he has exercised his discretion *mala fide*.

5. A court of equity may make an allowance for maintenance out of the income of an estate given to a trustee for an infant, although the instrument creating the trust contains no provision for maintenance; and in making such allowance the court will be governed entirely by a consideration of the amount of the infant's estate and the expenditure required for the maintenance of the infant in his station and condition in life.

6. But where the testator has provided in his will for the support and

maintenance of an infant, and has directed that so much of the income of a fund in the trustee's hands should be applied therefor as in the judgment of the trustee might be necessary for that purpose, the court will not take upon itself to regulate the maintenance, but will leave it to the judgment of the trustee, and will not interfere if the trustee has exercised a discretion within the limit of a sound and honest execution of the trust.

On appeal from a decree of the Chancellor, whose opinion is reported in *Patterson* v. *Read, 16 Stew. Eq. 18.*

Wilson Read died April 23d, 1882. By his will, duly executed, and bearing date January 12th, 1881, the testator, after devising a farm to his son Thomas, among other things, provided as follows:

"I give and bequeath to my beloved wife, Cornelia, all the interest and profits arising from the residue of all my personal or real estate of whatsoever kind, and wheresoever found, for her own personal use and benefit, or as much thereof as she may require or desire, during the term of her natural life; and in case of her death before the children of my daughter, Sarah Patterson, should be of age, then so much thereof of the interest of said estate as in the judgment of my executor may be necessary for the support and maintenance of said children of my said daughter, Sarah Patterson, during their minority."

The testator made a residuary disposition in these words:

"It is my will and I do order that after the decease of my beloved wife, Cornelia, that the residue of all my personal and real estate shall be equally divided between all the children of the aforesaid Thomas H. Read and the aforesaid Sarah Patterson, to share and share alike; and my executor is hereby empowered, if in his judgment it will be for the advantage of either of my grandchildren, on their attaining their majority, to pay to him or her what is their fair and just proportion or share of my residuary estate."

Sarah Patterson died several years before the testator, leaving children surviving her: Charles, who was sixteen years old when this bill was filed; Cora, who was then fourteen years, and James, whose age does not appear. Thomas had nine children living at the testator's death, eight of whom still survive, and two of whom are of full age.

The testator made his son Thomas H. executor, and his wife Cornelia executrix. The will was duly proved by the executor

Read *v.* Patterson.

and executrix. The testator's widow died in 1884, and in May, 1885, Thomas, the surviving executor, filed an account, showing a residuary estate in his hands, after payment of debts, expenses and allowances, amounting to $23,747.84.

In December, 1886, Charles and Cora, two of the minor children of Sarah, filed this bill, by their guardian and next friend, against the surviving executor. It charges that the complainants are minors of tender years, and unable to provide for their own support and maintenance, and are dependent on the charity of relatives therefor, their father, Henry J. Patterson, having abandoned them more than six years ago, without means of subsistence or protection. The bill further charges that by the terms of the testator's will the complainants are entitled to maintenance and support out of the income of the entire estate that remained in the hands of the executor at the time he filed his account. It alleges that the executor refuses to concede that right, and that he has paid nothing for the complainants' support except $466, which he paid to their guardian, being the interest on the complainants' share of the residuary estate. The prayer of the bill is for a decree that the complainants are entitled to such sums of money out of the income of the entire residuary estate as will be sufficient for their support, maintenance and education, and for a reference to ascertain the circumstances of the complainants and their present necessities for support and education.

Thomas H. Read, the surviving executor, was the only party defendant. James Patterson, the other son of Sarah Patterson, and the eight surviving children of Thomas H. Read, were not made parties. No process was issued, nor was any answer filed. In lieu of process and answer the following stipulation was filed:

"The issuing and serving of process in the above case waived, and also waived the right to file answer. The facts stated in the said bill are admitted, it being the understanding, intention and desire of the parties, both complainants and defendants, that the will of Nelson Read, deceased, be construed so as to ascertain by final decree the powers of the defendant as executor and the rights of the complainants."

This stipulation was signed by Mr. Winfield, as solicitor of the executor.

In this situation the case was brought on to a hearing by the complainants *ex parte*, and an interlocutory decree was made in conformity to the prayer of the bill, and directing a reference to a master to ascertain whether the complainants had any means of support, and if any, how much, and what amount of expenditure theretofore since the death of the testator's widow was and now is necessary for their support, maintenance and education, to be paid out of the residuary estate aforesaid.

At the hearing before the master depositions were taken, and by his report the master certified that the complainants had no means of support except under the testator's will ; that the income of the testator's residuary estate was amply sufficient for their support, education and maintenance ; that since the death of the testator's widow there had been expended for the support, maintenance and education of Charles the sum of $332.62, and for the support, maintenance and education of Cora the sum of $883.18 ; and that $5 per week for board and $100 a year for clothing and expenses for Charles, and $4 a week for board for Cora, and $100 a year for other expenses, would be a reasonable allowance. The master also certifies the reasonableness of these allowances, in view of the fact that the residuary estate of the testator in the hands of the executor amounted to the sum of $23,747.81, and was ample and sufficient to provide for the complainants in a liberal manner.

At the hearing before the master the defendant appeared personally and by the solicitor who signed the stipulation annexed to the bill, and, after the report was made, filed exceptions thereto. After a hearing upon the exceptions and the Chancellor's opinion overruling the same, but before any order overruling the exceptions was signed or a final decree was made, the defendant presented a petition setting out that he had no knowledge, notice or information that the said suit had been commenced or was pending until after the interlocutory decree construing the will had been made ; and that the appearance, waivers and admissions by the solicitor were made, signed and entered without the authority,

knowledge or consent of the petitioner; that in April, 1886, he had an interview with Mr. Winfield, in which the difference between the petitioner and the guardian of the complainants was talked over, and the petitioner stated that he was ready and willing to pay over to the complainants' guardian their shares of the principal of the residue of the estate, and that he instructed Mr. Winfield to see if that could not be brought about; that nothing passed between them in relation to the manner in which that result should be reached; that nothing was said about a suit in chancery being necessary therefor, and that the petitioner did not know that a suit was or would be necessary; that Mr. Winfield must have utterly misconceived and misunderstood the petitioner, or he could not have signed the consent and appearance, and made the admissions he did as petitioner's solicitor; that the petitioner, when informed of the interlocutory decree, had an interview with Mr. Winfield, and complained of the unauthorized manner in which the affair had been managed; that he was told in reply that there would be a chance to take proofs before the master, and that there the petitioner's case could then be brought out; that the petitioner would have produced testimony before the master, and was advised that it was unnecessary, that the whole matter, including the construction of the testator's will, could be brought before the Chancellor upon exceptions to the master's report; that he was surprised to learn, as he did, at or about the time of the hearing upon the master's report, that he could not then be heard upon the construction of the will, but only upon questions arising upon, or incidental to, the report of the master; and that it was at this time that he first learned how he had been brought before the court, and the nature, particulars and character of the admissions made in his behalf. The petition avers that the petitioner is aggrieved by the decree construing the will, in that it decided that the complainants are entitled to support, maintenance and education out of the income of the entire residuary estate of the decedent, irrespective of the discretion conferred upon the petitioner by the testator, and irrespective of the rights of the other grandchildren of the testator, and of the right of the petitioner to divide

the principal of the *residuum* among the grandchildren of the decedent, or to give to such of them as have or shall come of age their shares at any time after the death of the testator's widow, and also avers that the other child of Sarah Patterson and the children of the petitioner were necessary parties to the suit.

The prayer of the petitioner is that the decree construing the will, the order of reference, and all proceedings subsequent thereto, be set aside, and that the petitioner be allowed to plead, answer or demur to said bill upon such terms, &c.

Upon this petition application was made to the Chancellor to open the proceedings and allow the defendant to presen this case. The application was denied; the petition was dismissed, with costs; an order was made confirming the master's report, and a final decree signed directing the payment to the guardian of the complainants of $1,185.80, the aggregate of the expenses incurred theretofore for the support, maintenance and education of the complainants, deducting the sum of $456 already paid by the defendant, and directing the payment by him of the weekly and yearly sums reported by the master for future support, to commence from the date of the master's report, and to be continued quarterly thereafter during the minority of the complainants, respectively.

*Mr. H. H. Wainwright,* for the appellant.

*Mr. Robert Allen,* for the respondents.

The opinion of the court was delivered by

DEPUE, J.

From the order dismissing the petition and denying the application to open the proceedings, and permit the defendant to make defence, and the order overruling the exceptions to the master's report and the final decree, the defendant has appealed. The appeal also brings up the interlocutory decree—the final decree involving the merits of the case as settled by the inter-

locutory decree. *Terhune* v. *Colton, 1 Beas. 312; Crane* v. *De-Camp, 7 C. E. Gr. 614.*

The reasons assigned for reversal are—

*First.* That the other grandchildren are necessary parties. The account of the executor on file is a final settlement of the estate. The balance reported in hand is the residue, after payment of debts and expenses, to be distributed or applied according to the directions in the testator's will. In suits by creditors or specific legatees for satisfaction of their demands the residuary legatees need not be made parties. In such a suit residuary legatees are interested consequentially only from the circumstance that the recovery of the debt or legacy will reduce the residue, and under such circumstances the executor is regarded as the representative of all persons interested. *Story's Eq. Pl.* §§ *140, 141.* But that rule does not apply to this case. The testator directed the division of his estate, after the death of his wife, among his grandchildren. The event on which the distribution was to be made has occurred, and primarily the period for distribution has arrived. The testator made provision for the support and maintenance of those of his grandchildren who were children of his daughter Sarah, and conferred upon his executor power to pay to any of his grandchildren, on attaining majority, a fair and just proportion or share of the residuary estate. How far these clauses in the will control or affect the residuary disposition is one of the controversies in this case. In that controversy the persons entitled under the residuary disposition have a direct interest. One of the questions in dispute is, whether the complainants are entitled to have support and maintenance, having regard to the entire residuary estate. On this question the beneficiaries under the residuary clause are entitled to be heard. A decree against the executor in this suit would be no answer to a suit by the persons entitled under the residuary clause for immediate distribution. The case is therefore subject to the rule that in a suit which relates to the residuary estate all persons interested in the residue must be made parties. *Sherrit* v. *Birch, 3 Bro. C. C. 229; Parsons* v. *Neville, Id. 365; Brown* v. *Ricketts, 3 Johns. Ch. 553; Devoue* v. *Fanning, 4 Id. 199; DeHart*

v. *DeHart,* *2* *Gr.* *Ch.* *471* ; *Keeler* v. *Keeler,* *3* *Stock.* *458.*
In *Dandridge* v. *Washington,* *2* *Pet.* *370,* the testator, after
several devises and bequests, directed that the rest and residue
of his estate should be sold by his executors and invested,
and the interest thereof applied to the education of his three
nephews, Bartholomew Henly, Samuel Henly and John Dan-
dridge. He then provided that, debts and legacies being paid
and the education of his . nephews being completed, the re-
siduary estate should be divided among certain persons. On
a bill filed by Dandridge for support against the executors, it
was held that the residuary legatees were not necessary parties.
In that case there was no dispute involving the construction of
the will or the fund out of which support was to be furnished.
The only controversy was with respect to the amount which
should be applied to that purpose. In that controversy the
residuary legatees were interested only consequentially, and it
was properly held that, in such a controversy, the executors were
their representatives, and that the residuary legatees were not
necessary parties. In its circumstances that case differs radically
from the present case. But the court also held that the com-
plainant's suit was imperfect in the fact that the other two
nephews, who were entitled to participate with the complainant
in the fund applicable to their education, were not made parties
to the suit. The same imperfection exists in the present suit.
James Patterson, a son of Sarah, who is equally entitled with
the complainants to participate in the fund set apart for the
support and maintenance of her children, is not made a party,
nor is there any averment of a reason which would exclude him
from consideration in the disposition of the fund set apart for
the common benefit of the children of Sarah. The nature of
this suit requires that all who are interested in the residue should
be made parties.

*Second.* That the interlocutory decree, which settled the merits
of the case, was made without the appellant being properly
brought into court, and without opportunity being allowed him
to present the merits of his defence. The petition presented to
the Chancellor was not an application for a rehearing. A re-

hearing, strictly speaking, is simply a new hearing, and a new consideration of the case by the court in which the suit was originally heard, and upon the pleadings and depositions already in the case. An order denying a rehearing, in this sense, would not be an appealable order. The case could be reheard upon the merits on an appeal from the original decree, and the party would not be injured or aggrieved within the meaning of the statute by the Chancellor's refusal to rehear and reconsider it. The defendant's application was of a totally different character. He complained that the solicitor who appeared for him appeared without authority ; that the stipulation filed did not present the merits of the case, and that he had not any opportunity to present his evidence. These facts are set out in the defendant's petition, which is verified by affidavits and uncontradicted.

On the facts presented by this petition the decree was not only made in a suit in which the defendant was not summoned and to which he never appeared, but also upon a record which did not present the merits of the case.

The testator designated the fund from the produce of which the support and maintenance of the children of his daughter Sarah, during minority, should be made. But he vested in his executor the exercise of judgment with respect to the amount which should be necessary therefor. He also delegated to his executor the power to pay to any grandchild, on attaining majority, a fair and just proportion or share of the residuary estate, if in the judgment of the executor it would be for the advantage of such grandchild. The powers granted are in the nature of trusts, but nevertheless they are discretionary in the sense that they are to be executed by the executor in the exercise of his judgment. Where the power given to trustees is wholly discretionary to do or not to do a particular thing, in their discretion, the court has no jurisdiction to lay a command or prohibition upon the trustees as to the exercise of that power, provided their conduct be *bona fide*, and their determination is not influenced by improper motives. *2 Lewin on Trusts (8th ed.) 612.* Where the power is coupled with a trust or duty, the court will enforce a proper and timely exercise of the power; but if it be given upon a trust to be exercised

in the discretion or upon the judgment of the trustee, the court will not interfere with the trustee's discretion in executing the trust, unless he has exercised his discretion *mala fide*. *French v. Davidson, 4 Madd. 396, 402; Pink v. DeThuisey, 2 Id. 157, 163; Walker v. Walker, 5 Id. 424, 426; Livesey v. Harding, Tamlyn 460; Douglas v. Andrews, 3 Jurist 949; Wain v. Earl of Egmont, 3 Myl. & K. 445; Costabadie v. Costabadie, 6 Hare 410; Potter v. Chapman, Ambler 98, 99; Kekewich v. Marker, 3 MacN. and Gord. 311; 2 Perry on Trusts § 511.*

A court of equity may make an allowance for maintenance out of the income of an estate given to a trustee for an infant, although the instrument creating the trust contains no provision for maintenance, and there is a direction that the interest shall accumulate; and, in making such allowance, the court will be governed entirely by a consideration of the amount of the infant's estate and the expenditure required for the maintenance of the infant in his station and condition in life. *2 Perry on Trusts § 615; 2 Lead. Cas. in Eq. 711, 714, 716, notes to Eyre v. Countess of Shrewsbury.* But another principle applies where the testator has himself provided for the support and maintenance, and has directed that so much of the income of a fund in the trustee's hands should be applied therefor as, in the judgment of the trustee, might be necessary for that purpose, especially where the fund itself ultimately goes to other beneficiaries and is subject to a power in the trustee, in his discretion, to anticipate the distribution of the fund. In such cases the court will not take upon itself to regulate the maintenance, but will leave it to the judgment of the trustee, and will not interpose if the trustee has exercised a discretion within the limit of a sound and honest execution of the trust. *2 Lewin 614; Livesey v. Harding, Tamlyn, 460; Douglas v. Andrews, 3 Jurist 949; Costabadie v. Costabadie, 6 Hare 410; Brophy v. Bellamy, L. R. (8 Ch. App.) 798; Tempest v. Lord Camoys, L. R. (21 Ch. Div.) 571.*

In *Costabadie* v. *Costabadie* the testator gave all his real and personal estate to his wife, upon trust, that she should receive the rents and profits, and pay and apply the same to her own use and to the use of the children of their marriage, agreeably and ac-

cording to her own discretion, during her life. A bill was filed by an unmarried daughter complaining that the widow, in order to save money out of the estate, had treated her children harshly, and that the complainant, for that reason, had been compelled to live with other members of her family and partly to depend upon their bounty, and alleging that the sums allowed to her by her mother were not sufficient to procure for her those comforts and enjoyments to which she was accustomed during the life of the testator, and which the estate left by the testator was large enough to afford. The bill prayed an account, and that the defendant might be decreed to pay to the complainant, out of the rents, issues and profits, such a sum as should appear to be proper in the circumstances of the case. The defendant answered, denying the harsh treatment complained of, and insisting as well on the discretion which the testator had given her as on the propriety with which it had been exercised. Sir James Wigram, V. C., commenting on the discretionary power given, said : " The testator may limit and circumscribe the interests which he bequeaths to his children as he may think proper, and the court cannot enlarge the interest which he has given. If the gift be subject to the discretion of another person, so long as that person exercises a sound and honest discretion I am not aware of any principle or any authority upon which the court should deprive the party of that discretionary power. Where a proper and honest discretion is exercised the legatee takes all that the testator gave or intended that he should have—that is, so much as, in the honest and reasonable exercise of that discretion, he is entitled to. But, consistently with the plaintiff having an interest subject to the mother's discretion, she has a right  *   *   *  to a discovery of all the acts which have been done and the reasons for doing them, which the defendant may be able to give. She has that right in order that the court may be able to see whether the discretion which has been exercised by the party intrusted with it is within the limits of a sound and honest execution of the trust. Beyond that I am not aware that, because a person who takes an interest in property, subject to the discretion of another, is dissatisfied with the exercise of that discretion, therefore the court

will take it away from that party and assume itself to exercise it. If a bill be filed the court will, of course, inquire into the acts which have been done in the administration of the trust, and may possibly (as has been done in many cases) require the trustee to exercise the discretion under the view of the court."

A court of equity will examine into the conduct of a trustee in the execution of his discretionary powers, and will assume control over the trustee's conduct, and if need be will take upon itself the execution of the trust. But the court will exercise this prerogative with great caution, and will not displace the trustee from exercising his functions, unless, upon a consideration of the reasons and grounds upon which he has acted, it appears that he has abused his trust, and that his acts in the premises have not been within the limits of a sound and honest execution of the trust. In this case, the execution of the trust has been taken from the trustee and delegated to a master in a suit of which the trustee had no knowledge, and by a decree made *ex parte* and without an answer, which would have enabled the trustee to submit the grounds and reasons upon which he acted. In *In re Lofthouse, L. R. (29 Ch. Div.) 921,* the court, having disapproved of the amount allowed by the trustees for the maintenance of an infant, under a power of this character, suspended judgment, to allow the trustees to make a new offer, which the court approved in the place of the sum ordered by the Vice-Chancellor. *In re Gadd, L. R. (23 Ch. Div.) 134,* and *Tempest* v. *Lord Camoys, 21 Id. 571,* are illustrations of the reluctance of the court to interfere with the discretionary powers of a trustee, although it may disapprove of the trustee's acts. From the bill in this case it appears that there was a dispute with respect to the fund from the income of which the complainants were entitled to support. That controversy being decided, the judgment of the executor with respect to the amount necessary for the complainants' support and maintenance remained as a substantial discretionary power to be exercised by the executor. Every allegation of fact in the bill may be true, and yet there may be no substantial grounds on which to take

from the defendant the discretionary powers conferred on him by the testator.

The order denying the defendant's application for leave to appear and answer is an appealable order within principles heretofore adjudged. *Camden and Amboy R. R. Co.* v. *Stewart, 6 C. E. Gr. 484; Woodward* v. *Bullock, 12 Id. 507; Day* v. *Allaire, 4 Stew. Eq. 303, 315; Beach* v. *Fulton Bank, 2 Wend. 225.*

Nor did the defendant lose his right to a hearing upon the merits by laches or waiver. The merits of the case were substantially disposed of by the interlocutory decree, and the defendant had no knowledge of the pendency of the suit until after that decree was made. He appeared before the master upon advice that he could then present his case, and had no knowledge that he was foreclosed until about the time of the hearing on exceptions to the master's report, and he then first learned how he had been brought before the court, and the nature, particulars and character of the admissions that had been made in his behalf, and he thereupon promptly made this application.

There should be a reversal, and the record be remitted, to the end that the bill may be amended in the matter of parties, and that the defendant be allowed to plead, answer or demur thereto.

*Decree unanimously reversed.*