RICHARD O'GORMAN et al., executors, &c.,

*v.*

MARY CROWLY et al.

[Submitted April 1st, 1912.  Decided April 25th, 1912.]

1. The second paragraph of a will gave to testator's executors $25,000, in trust to pay the income to testator's son during his natural life, but further provided that said executors could terminate "said trust and to pay to my said son the said sum of $25,000 whenever in the opinion of my executors his mental and physical condition is such that he is competent to attend to affairs," but that if the son die during the continuance

of the trust, and before the payment of such sum to him, that it be paid to his issue; and the fourth clause gave the residue to testator's niece, and, in case she be not living at testator's death, then to her issue, and if there be no issue then living to testator's son.—*Held*, that the authority to pay the $25,000 to testator's son was a mere naked power resting in the executors' discretion, and not a power coupled with a trust, so that the executors could not be compelled to pay it to the son, upon a showing that the son was competent to attend to his affairs.

2. A mere discretion in the trustees is a mere power; but an imperative discretion implies a trust.

3. If one had no control during his lifetime over the *corpus* of a trust fund held in trust for him, he could not dispose of it by will.

On final hearing on bill, answer, replication and proofs.

*Mr. John Bigelow,* for the complainants.

*Mr. Thomas A. Davis,* for the defendant Mary Crowly.

*Mr. Edward O. Stanley, Jr.,* and *Mr. John P. Hill* (of the Maryland bar), for Stella Lawson and others.

HOWELL, V. C.

On July 28th, 1901, David Ledwith died, leaving a son, James H. Ledwith, and leaving a will, which was admitted to probate by the surrogate of Essex county. It contains the following provisions, which are brought in question in this suit:

"*Second.* I give and bequeath to my executors hereinafter named the sum of twenty-five thousand dollars in trust to keep the same safely invested and to pay the income therefrom to my son, James Herbert Ledwith during the term of his natural life, but I authorize and empower my said executors to terminate said trust and to pay to my said son the said sum of twenty-five thousand dollars whenever in the opinion of my executors his mental and physical condition is such that he is competent to attend to affairs. If, however, my said son shall die during the continuance of said trust and prior to the payment to him of said twenty-five thousand dollars, I direct that said sum of twenty-five thousand dollars shall be paid to his issue then living, and if there be no issue of my said son, then living, said sum of twenty-five thousand dollars shall fall back into and become part and parcel of my residuary estate and shall be disposed of as directed in the fourth clause. of this my will."

"*Fourth.* All the rest, residue and remainder of my estate, whether real, personal or mixed, and wheresoever situate, I give, devise and bequeath unto my niece Mary Crowly, daughter of my sister Mary, and now residing in Jefferson street, Orange, New Jersey. In case my said niece be not living at the time of my death, then I give, devise and bequeath my said residuary estate to her issue, and if. no issue of hers be then living, I give, devise and bequeath the same to my son James Herbert Ledwith, or if he be then dead, to his issue then living, and if no issue of his be then living I direct that my said residuary estate shall be distributed according to the laws of the State of New Jersey in case of intestacy."

By the will he named Richard O'Gorman and John T. Brennan as executors thereof, and they now file their bill for the purpose of obtaining directions as to the distribution of the estate.

James H. Ledwith died without issue on August 16th, 1910; he was then a resident of New York; he left a will which was admitted to probate in that state by which he devised all his estate to his executors in trust, to pay to a Mrs. Riker the sum of $1,200 per annum as long as she might live, in equal quarterly payments, out of the income derived therefrom, and to pay the balance to the defendants, Mary Lawson, Stella Lawson, Rosa Lawson and Noble Lawson, who were his cousins, or to such of them as might be living, in equal shares, at the death of Mrs. Riker. The residuary legatee under David Ledwith's will and the residuary legatees under James H. Ledwith's will are made defendants. All have answered except Noble Lawson; Mary Crowly claiming the fund as the residue of David Ledwith's estate upon the ground that there was a direct devise of the sum to her by his will in case the complainants should not have paid the principal of the trust fund to James H. Ledwith in his lifetime, and the Lawsons claiming as residuary legatees of James H. Ledwith upon the ground that it was the duty of the executors under the circumstances to have paid the principal sum of the trust fund to James H. Ledwith in his lifetime, and under the circumstances James H. Ledwith had the equitable title thereto which passed to them under his will at the time of his death. This question involves a construction of the second paragraph of David Ledwith's will, and a determination of the inquiry whether it ever became the duty of the executors to transfer to

the life tenant the principal of the trust fund; and this involves the further inquiry whether the authority given to the executors was a mere naked power resting in their uncontrolled discretion, or whether it was a power coupled with a trust which made it their imperative duty to have distributed the fund to James H. Ledwith upon the ascertainment of the fact of his competency "to attend to affairs." It must be conceded that if the direction given in that behalf to the executors rested wholly in their discretion this court can have no jurisdiction to compel its exercise. If, on the other hand, the provision is a power joined to a trust, so that an imperative direction can be found in the will, then under certain circumstances this court might compel the exercise of the power, or exercise it itself in favor of the *cestui que trust.* If this be found to be the case, then the further question arises whether it must have been compelled in his lifetime, or whether his residuary legatees, the Lawsons, after his death, can be permitted to bring a suit for that purpose.

It may be said generally that a mere discretion is a mere power, but that an imperative discretion implies a trust. The general rules on the subject are found in *1 Perry Trusts (6th ed.)* § *248,* under the title "Trusts that arise by construction from powers." They have likewise received considerable illustration in this state. In *Read* v. *Patterson, 44 N. J. Eq. (17 Stew.) 211,* Mr. Justice Depue, speaking for the court of errors and appeals, stated the rule as follows: "Where the power given to trustees is wholly discretionary to do or not to do a particular thing in their discretion, the court has no jurisdiction to lay a command or prohibition upon the trustees as to the exercise of that power, provided their conduct be *bona fide* and their determination is not influenced by improper motives. Where the power is coupled with a trust or duty the court will enforce a proper and timely exercise of the power, but if it be given upon a trust to be executed in the discretion or upon the judgment of the trustee, the court will not interfere with the trustee's discretion in executing the trust, unless he has exercised his discretion *mala fide.*" In that case there was a clear expression of the intention of the testator of an imperative

direction to pay out a portion of the trust funds for particular purposes in his discretion; that is to say, he was required to make the payment; but the amount and the manner and the times and the other circumstances attending it were discretionary with him. And concerning this branch of the case Mr. Justice Depue says further: "A court of equity will examine into the conduct of a trustee in the execution of his discretionary powers and will assume control, over the trustee's conduct, and if need be will take upon itself the execution of the trust; but the court will exercise this prerogative with great caution and will not displace the trustee from exercising his functions unless upon a consideration of the reasons and grounds upon which he has acted it *appears* that he has abused his trust and that his acts in the premises have not been within the limits of a sound and honest execution of the trust." I understand this case to decide that this court will never interfere with the discretion of a trustee where it is a matter of pure discretion on his part whether he will or will not do a certain thing; but where the doing of this specified thing appears to be imperative, but the methods or details are discretionary with him, then and in such case the court will exercise a control over his discretion, but that only in a case where he has acted *mala fide* or has abused his trust. In some cases the court will go so far as to execute the trust itself on equitable principles.

In *Larkin* v. *Wikoff*, 75 *N. J. Eq.* (5 *Buch.*) 462; affirmed, 77 *N. J. Eq.* (7 *Buch.*) 589, the opinion written by Vice-Chancellor, now Chancellor, Walker, illustrates the doctrine quite fully. There the controversy arose out of a deed of trust by which the donor conveyed real estate and gave personal property upon a trust to maintain a house of worship. It contained this provision: "Whenever from any cause it shall seem to the said trustees clearly expedient to discontinue the plan of holding the said property for said use as aforesaid, they, the said trustees, being the judges and fully authorized to decide such discontinuance upon all or any case whatever, then in such case of non-user, abandonment or discontinuance the said trustees shall hold the said land and all buildings thereon as the prop-

erty of the said trustees for the use of the First Presbyterian Church," &c. They decided to discontinue the use of the property for religious purposes and to sell the same, and the question was whether this action was within their uncontrolled discretion or not. The vice-chancellor collects all the cases and holds that where a power is given to trustees to do or not to do a particular thing at their discretion the court has no jurisdiction to lay a command or a prohibition upon them as to the exercise of that power, provided their conduct be *bona fide,* and their determination is not influenced by improper motives. One of the cases referred to is *Talbott* v. *Marshfield, 2 Dr. & Sm. 285,* decided by Vice-Chancellor Kindersley, in which it appeared that it was the intention of the testator that if a certain exigency arose the trustees should, if they saw fit in the exercise of their discretion, notwithstanding the gift in remainder, hand over the *corpus* of the fund to the persons entitled for life; he held that the court would not interfere with the honest exercise of such discretion, and that the mere exercise of such a power would afford no reason why the money should not be paid into court, and that inasmuch as the power might never be exercised, the bringing of the money into court would not in the slightest degree prevent its being exercised.

On behalf of the residuary legatees under James H. Ledwith's will (the Lawsons) three cases were cited which I am constrained to hold have little or no application to the question in hand. They are *Weiland* v. *Townsend, 33 N. J. Eq.* (*6 Stew.*) *393; Pedrick* v. *Pedrick, 48 N. J. Eq.* (*3 Dick.*) *313,* and *Dillingham* v. *Marlin, 61 N. J. Eq.* (*16 Dick.*) *276,* all cases in this court. In *Weiland* v. *Townsend* there was an imperative duty cast upon the trustees to provide for the support of members of the testator's immediate family, but the amount was necessarily left to the discretion of the executor. It was there held in accordance with the rule which I have attempted to state that in cases of the failure of the trustee to act the court would execute the trust through a successor to be appointed by substituting equitable rules in place of the arbitrary power. In *Pedrick* v. *Pedrick* there was a direction for the payment to the complainant (a son) by the executor of

one-third of the residue of the estate at such times and in such sums as the executor should deem most for the legatee's good, and giving further directions about the manner in which the executor should act in case the son did not make proper use of his money. Here was likewise an imperative trust, the manner of its execution alone being discretionary with the trustee. It was held that this was a sort of trust which the court would take jurisdiction over. In *Dillingham* v. *Martin* the real question decided was whether a substituted trustee had the right to perform all the acts which the will of the testator authorized the original trustees to perform. There the succeeding trustee was appointed by the orphans court, and it was held that under the peculiar terms of the will, and of the Orphans Court act, the succeeding trustee did not have the right and could not in his own discretion and on his own judgment make the advances which the original trustee had the authority to make at his discretion in accordance with the terms of the will; yet the chancellor says that it does not follow that the court would not superintend the execution of the trust under equitable rules, and require the substituted trustee to distribute the fund in accordance therewith upon a proper presentation of facts for that purpose. It is quite clear upon reading the provisions of the will in that case that there was an imperative duty cast upon the original trustee, and that the trust belonged to that class which the court will superintend.

In view of the rules laid down in *Read* v. *Patterson,* let us examine the provision of the will to ascertain what the duty of the executors was. They were—*first,* to set apart $25,000 and keep the same safely invested, and *second,* to pay the income therefrom to James H. Ledwith during the term of his natural life. These requirements were scrupulously complied with by them. Having created this situation, he next authorized his executors to terminate it and pay the *corpus* of the estate to the life tenant "whenever in the opinion of my executors his mental and physical condition is such that he is competent to attend to affairs." I find in this no imperative direction to pay the principal sum to the life tenant. There is no construction of these words which could lead to that con-

clusion. The executors held a fund which they were author-
ized to pay in a certain way, but where are the words which
indicate that it was the intention of the testator that they
should be bound to make the payment? The testator had
created a situation which the executors might change in their
discretion, but where do we find in this will any expressions
which require them to do so? There is nothing to indicate
that the testator had any such positive and absolute direction
in his mind, nor is there anything in the situation as developed
by the evidence which could lead to any such conclusion. The
fact that the life tenant never made any demand upon the
executors for payment of the money to him indicates his satis-
faction with the conditions, and it may be said perhaps that
his acquiescence might be all the warrant that the executors
would need for their non-action.

I must therefore hold that the discretion given by this will
to the executors was a mere power to be exercised at their own
will over which neither the life tenant nor this court could
have exercised any authority; that there is no imperative trust
for the breach of which an appeal could be had to this court,
and that this court has no jurisdiction whatever in that matter.

Having decided in favor of the residuary legatee under the
David Ledwith will, I do not feel it necessary to decide the
question whether the Lawsons are in a position to lay claim to
the fund or not. In their answer they claim that the trust
under the David Ledwith will was terminated during the life
of James H. Ledwith, and that before his death he became en-
titled to receive from the complainants as his absolute property
the principal of the trust fund. The argument to support this
view is that there came a time in the life of James H. Ledwith
when as a matter of fact, and without reference to the thought
of the executors on the subject, his mental and physical condi-
tion was such that he was competent "to attend to affairs,"
whatever that may mean. It will be readily observed from the
views which have been already expressed that this provision of
David Ledwith's will was not automatic or self-executing. The
trust could not determine itself; neither could James H. Led-
with put an end to it by his will or by any other act. It re-

quired the authority and power of the executors, who might act or not, as they saw fit. If James H. Ledwith was not invested with title to or control over ,this property in his lifetime, and he certainly had no such power or control, I do not see how he could dispose of it by will or authorize anyone to intermeddle.

My conclusion is that the executors must transfer the funds in their hands to the defendant Mary Crowly.