55 N.J. Super. 500 (1959)
151 A.2d 201
IN THE MATTER OF THE ESTATE OF WILLIAM C. FIEDLER, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued December 22, 1958.
Decided May 8, 1959.
*502 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. William Rowe argued the cause for appellant (Messrs. Steelman, Lafferty & Rowe, attorneys).
*503 Mr. Justin W. Seymour argued the cause for respondents (Messrs. Seymour & Seymour, attorneys).
The opinion of the court was delivered by HANEMAN, J.A.D.
L. Theodore Fiedler (hereinafter plaintiff), executor of the estate of William C. Fiedler, deceased, appeals from a judgment of the Essex County Court, Probate Division, dismissing his complaint for judicial approval of a plan of distribution of the assets of said estate.
William C. Fiedler died testate on August 29, 1950. On September 12, 1950 letters testamentary were granted to plaintiff by the Essex County Surrogate's Court. Various contingencies, provided for in decedent's will, have occurred, and the residuary estate, both real and personal, is now vested; one-half in L. Theodore Fiedler, and one-half equally in testator's grandchildren (hereinafter defendants). Defendants are identified as follows: Helen B.D. Dakis, John M. Fiedler and William C. Fiedler, II, who are the children of testator's son, William L.J. Fiedler (William predeceased his father), and Martha F. Morris and Janet F. Lorensen, who are the children of testator's son, L. Theodore Fiedler, the plaintiff here.
The provision of decedent's will here pertinent is article Fifth, which provides:
"I authorize my Executors and Trustees in their discretion: * * *
(j) To divide or make distribution of all or any part of my estate in kind and without converting the same into cash, and for such purpose to value and appraise any and all properties, securities and investments as of the time of any such division or distribution, which valuation, made in good faith, shall be binding upon all parties interested.

* * * * * * * *
(1) Generally, to do all acts, take all proceedings and exercise all rights, privileges and discretions although not specifically mentioned in this will, as if they were the absolute owners of my estate."
The assets presently remaining in the estate are these:
1. 11 shares of stock of Fiedler-Hollister Corp., an insurance agency. The balance of the outstanding stock (11 *504 shares) is owned by Robinson G. Hollister, the operating manager, or by members of Hollister's family.
2. 50 shares of stock of Forty-one Central Ave. Corp., owner of a two-story office building at the title address and of a small unimproved parcel of land at 48 East Park Street, Newark. The balance of the outstanding stock (50 shares) is owned as follows: 40 shares by Helen D. Bahrenburg (widow of William L.J. Fiedler) and one share by her present husband, Edward H. Bahrenburg.
3. 92 shares of stock (the entire stock issued and outstanding) of Littleton Farms, Inc., owner of a tract of approximately 33 acres of undeveloped land in Parsippany-Troy Hills Township.
4. 74 shares of stock of Fiedler Corporation, owner of a three-story office building at 14 Park Place, Newark. The balance of the outstanding stock (10 shares) is owned as follows: 5 shares by plaintiff and 5 shares by the representatives of William J.L. Fiedler, deceased.
5. Three and one-third shares of stock of Fiedler, Inc., a real estate brokerage firm. The balance of the outstanding stock is owned as follows: three and one-third shares by L. Theodore Fiedler and three and one-third shares by the representatives of William L.J. Fiedler, deceased.
6. Two adjacent unimproved building lots in Glen Ridge.
7. One 1946 Chrysler sedan, inventoried at $800.
8. Household furniture, personal effects, cash and securities valued in the inventory at $31,702.74.
Two liabilities remain against the estate. The first is ascertainable  an indebtedness of decedent to Fiedler Corporation, now in the sum of $23,075; the second, the amount to be charged against the estate in connection with the present and any further proceedings.
On December 10, 1956 plaintiff filed a complaint seeking approval of a plan of distribution for the remaining assets of decedent's estate. The plan of distribution, as set forth in the complaint, is as follows:

*505
L. Theodore Fiedler (1/2  residuary estate)
 74 sh. Fiedler Corp. .................. $89,499.30
 17 sh. Littleton Farms, Inc. .......... 15,419.51
 11 sh. Fiedler-Hollister, Inc. ........ 2,200.00
 Chrysler '48 Windsor sedan ............ 800.00 $107,918.81
 __________
Janet Fiedler (1/10  residuary estate)
 15 sh. Littleton Farms, Inc. .......... 13,605.45
 10 sh. Forty-one Central Ave.
 Corp. ............................... 8,085.80 $21,691.25
 __________
Martha Fiedler Morris (1/10  residuary estate)
 15 sh. Littleton Farms, Inc. .......... 13,605.45
 10 sh. Forty-one Central Ave.
 Corp. ............................... 8,085.80 21,691.25
 __________
John M. Fiedler (1/10  residuary estate)
 15 sh. Littleton Farms, Inc. .......... 13,605.45
 10 sh. Forty-one Central Ave.
 Corp. ............................... 8,085.80 21,691.25
 __________
Helen B.D. Dakis (1/10  residuary estate)
 15 sh. Littleton Farms, Inc. .......... 13,605.45
 10 sh. Forty-one Central Ave.
 Corp. ............................... 8,085.80 21,691.25
 __________
William C. Fiedler, II (1/10  residuary estate)
 15 sh. Littleton Farms, Inc. .......... 13,605.45
 10 sh. Forty-one Central Ave.
 Corp. ............................... 8,085.80 21,691.25 108,456.25
 __________ __________
 Reserve (consisting of cash, $15,000 U.S. Savings
 Bonds, jewelry, $1,000 6% first mortgage Chamber of
 Commerce, Newark and household furniture, furnishings
 and silverware) for payment of expenses of these
 proceedings and other expenses to complete administration
 of estate and to pay balance of indebtedness due
 from estate to Fiedler Corp. ............................ 31,702.74
 ___________
 $248,077.80

Defendants object to the proposed distribution upon these grounds:
1. The proposed distribution is not in accord with the provision of the will.
2. The proposed distribution is not made by plaintiff in good faith and is not in accord with the intent of the will.
*506 3. The valuations of the assets by plaintiff are not true and fair values as of the time of distribution and such valuations are not binding on them.
4. Because of the fiduciary relationship which exists between plaintiff and defendants, plaintiff is prohibited from exercising any discretion in connection with the distribution and division of the assets.
5. The distribution proposed is illegal, unfair, inequitable and disproportionate, and gives plaintiff an unwarranted benefit and advantage.
By way of counterclaim defendants seek a distribution of the estate in such manner that each of the remaining assets would be divided and distributed as follows: 50% of each item to plaintiff individually and 10% of each item to each of the defendants. Defendants ground their demand on the theory that such was the type of distribution and division especially contemplated and directed by the will. They demand, alternatively, that all remaining assets be liquidated and a distribution be made in cash.
On May 22, 1958 the trial court, by order, dismissed the complaint and counterclaim with prejudice. The trial judge found that; plaintiff was motivated by a selfish interest in allocating various assets to himself; such an allocation was probably detrimental to defendants; the plan of distribution of the assets in the proposed manner was unfair and inequitable to defendants; plaintiff has not exercised the utmost good faith; future possible capital gains taxes upon the various assets favored plaintiff; the assets bearing testator's name have a certain, though indefinite, pecuniary value; the terms of the will, however, did not require distribution in the form urged by defendants.
Initially it should be noted that defendants do not dispute the right of plaintiff to distribute the residuum in kind under the express provisions of the will, nor do we see how defendants could have successfully argued otherwise. 7 New Jersey Practice (Clapp, Wills and Administration) 366 (1950); cf. In re Bush's Will, 2 A.D.2d 526, *507 156 N.Y.S.2d 897 (1956), affirmed 3 N.Y.2d 908, 167 N.Y.S.2d 927, 145 N.E.2d 872 (Ct. App. 1957).
Under the express terms of the will plaintiff is given absolute discretion to distribute the remaining assets of the estate in kind. The sole restriction imposed is that the valuations of the assets shall be made in "good faith." Therefore, the court may not interfere with the manner and mode of distribution unless the executor has been guilty of bad faith in evaluating the assets. 6 New Jersey Practice (Clapp, Wills and Administration), 584, § 575 (1950); Noble v. Union Township, 140 N.J. Eq. 513 (Ch. 1947); Latorraca v. Latorraca, 132 N.J. Eq. 40 (Ch. 1942), affirmed 133 N.J. Eq. 298 (E. & A. 1943); O'Gorman v. Crowly, 80 N.J. Eq. 101 (Ch. 1912), affirmed 81 N.J. Eq. 520 (E. & A. 1913); Read v. Patterson, 44 N.J. Eq. 211 (E. & A. 1888). The language of the will, insofar as it requires a good faith valuation of the assets by the executor, merely expresses the rule to which the court would hold the executor accountable, absent any contrary direction in the will. Cf. Day v. Grossman, 44 N.J. Super. 28 (App. Div. 1957). Accordingly, if the appraisals of decedent's property were made in good faith by qualified appraisers whose results can be reasonably supported, we will not disturb them.
This leads to an examination of defendants' contentions. Basically, defendants object to the appraisal of the real estate holdings of the corporations in which the estate owns stock. In furtherance of ascertaining the value, and prior to preparing a schedule of distribution thereof, plaintiff retained one John A. Linnett, a qualified real estate expert, who appraised the real estate holdings of each corporation in which the estate held stock. The resulting figures were conveyed to one Loren A. Gardner, a certified public accountant, who adjusted the appraisals through the capital account to establish the book value of the various shares of stock. Thereafter, plaintiff obtained the services of Sidney Schwarz and Herbert Goldberg, who also qualified as real estate experts. Schwarz and Goldberg appraised various *508 of the real estate holdings. Defendants' real estate experts were Gilbert N. Swett and George Goldstein, both fully qualified. The former testified only as to Littleton Farms, Inc., the latter as to all of the real estate holdings except Littleton Farms, Inc. The valuations of these experts were as follows:

 Linnett Goldberg Schwarz Goldstein Swett
14 Park Place Land $30,000 × $37,957
Purch. 1923 Bldg. 46,000 × 32,465
Depr. rate Total 76,000 × 70,422
$1,521.83
41 Central Ave. Land 25,100 $30,000 42,000
Purch. 1946 Bldg. 63,700 60,000 28,707
Depr. rate Total 88,800 90,000 70,707
$1,200
48 E. Park St. Land 9,500 10,000 3,250
Purch 1948 Bldg. × × ×
 Total 9,500 10,000 3,250
Littleton Farms 71,250 72,600 19,620

Although there are apparent variances in the values so established for the Park Place, Central Avenue and East Park Street properties, there is not such great discrepancy as would cause the appraisals of plaintiff's experts to be characterized as having been made in bad faith. The difference in the values established for the Littleton Farm property is far greater. However, we cannot say, considering the different modes of approach of Linnett and Schwarz and Swett, that the values established by the first two experts are so drastically out of line as to demonstrate bad faith. It is to be noted that Swett was confused as to the applicable zoning regulations in the subject and comparable properties and the grade and drainage conditions on comparable property, and that he had little information concerning other actual sales in the neighborhood.
Any trial judge who has had experience with real estate experts, even those with apparently outstanding qualifications, has become accustomed to what may seem to the *509 uninitiated to be unwarranted and irreconcilable differences in value, urged with seeming sincerity. See State v. Gorga, 54 N.J. Super. 520, 525 (App. Div. 1959). The mere lack of uniformity of the appraisals does not lead to the conclusion that there was an intentional excessive increase or decrease in value, prompted solely by a desire to serve and advance the interest of the party calling the witness. Extremes of value established by expert testimony are to be viewed in detail with a critical eye. Analyzing the testimony sub judice in such a manner leads us to the conclusion that the real estate values established by plaintiff for purposes of the proposed plan of distribution were made in good faith.
Defendants have further raised some question addressed to the propriety of the method of determining the value of the stocks for the purpose of distribution. We have not been referred to nor have we discovered any reported decisions which involve the ascertainment of the value of stock in close or family corporations for purposes of estate distribution. We do have transfer inheritance tax cases and stockholders' suits in which our courts have established precedents. See, for example, Tracy v. Alexander, 17 N.J. 397 (1955); Bassett v. Neeld, 23 N.J. 551 (1957); Renwick v. Martin, 126 N.J. Eq. 564 (Prerog. 1939); Plum v. Martin, 132 N.J. Eq. 1 (Prerog. 1942); Johnson v. Zink, 140 N.J. Eq. 255 (Prerog. 1947). Generally, the proper method of establishing the value of such stocks in closely held corporations for purposes of distribution where there exists no ready available market for sale is the net or book value method which involves an appraisal of all of the corporate real and personal assets and a deduction therefrom of corporate liabilities. In some instances the capitalization of earnings may be the most reliable method of ascertaining value. The yardstick to be employed depends upon the facts of the particular case. There is nothing in the case sub judice which warrants the conclusion that the theory employed by plaintiff in ascertaining the value of the stocks *510 of Forty-one Central Ave. Corp., Littleton Farms, Inc. and Fiedler, Inc. was improper.
Defendants further argue that some allowance or reduction in value should be made because of the minority interest which they will receive in each of the corporate entities. They urge that because of the nature of such minority interests they are subject to the dividend policy of the majority and that their securities could not be liquidated for book or net value, if at all; hence they cannot realize a price based upon intrinsic book value. See Tracy v. Alexander, supra; Bassett v. Neeld, supra; Whittemore v. Fitzpatrick, 127 F. Supp. 710 (D.C.D. Conn. 1954); Grell v. Kelly, 132 N.J.L. 450 (Sup. Ct. 1945). On the facts before us, it is to be noted that, with one exception, no one individual has a majority of stock in any of the corporations in which defendants would have an interest. Actually, the shares of stock in these corporations will be practically equally held by each of the beneficiaries. The only corporation stocks not so affected are Fiedler Corp., of which plaintiff will be the majority proprietor, and Fiedler-Hollister, Inc., of which plaintiff will own 50% of the out standing stock. We do not conceive, under the facts here present, that a discount from book value is required.
In addition, defendants argue that the stock values under the proposed distribution do not allow for the difference in eventual income tax bases resulting from possible capital gains or for their inability to realize upon the stock of Littleton Farms, Inc., because of their lack of development experience. This latter condition will, they say, reduce their ability to realize the full value thereof. We conceive that there is no merit to these objections, particularly in the light of the fact that the actual values of the various assets were established in good faith as of the date of the proposed distribution.
Defendants' argument that plaintiff has preferred himself in the distribution and hence breached his fiduciary duty is bottomed principally upon their displeasure with the assets *511 which they are to receive, and encompasses by way of repetition their arguments above outlined.
It should be remembered that the question of whether distribution should be made in kind is entrusted by the will to plaintiff. Inherent in such a situation is the possibility of conflict between plaintiff in his respective positions as executor and beneficiary. It is also well established that a fiduciary is held to a stricter accountability than is required by the "morals of the market place." In Rosencrans v. Fry, 12 N.J. 88, 101-102 (1953), the court said:
"It is fundamental that a trustee owes a duty of undivided loyalty to his cestui que trust, and the doctrine maintaining the rule has often been expressed.
`It is both sound law and good morals that a fiduciary may not, in case of conflict, subordinate the cestui's interest to his own. Undivided loyalty is of the very essence of the relationship. The trustee is under a peremptory duty of complete loyalty and fidelity to the cestui. Self-interest can never be the determinative. He cannot serve two masters in an area of service involving divergent and discrepant interests.' Camden Trust Co. v. Cramer, 136 N.J. Eq. 261 (E. & A. 1944).
See also In re Westhall's Estate, 125 N.J. Eq. 551 (E. & A. 1939); Taylor v. Errion, 137 N.J. Eq. 221 (Ch. 1945), affirmed 140 N.J. Eq. 495 (E. & A. 1947); Liberty Title & Trust Co. v. Plews, 6 N.J. 28 (1950); Bankers Trust Co. v. Bacot, 6 N.J. 426 (1951).
Judge Cardozo, in the often quoted case of Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 546, 62 A.L.R. 1 (Ct. App. 1928), said:
`A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of the courts of equity when petitioned to undermine the rule of undivided loyalty by the "disintegrating erosion" of particular exceptions. * * * Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. * * *'"
The testator has, by the very language of the will, placed plaintiff in his present position. His alleged conflicts of interest are grounded in the very directions of that instrument. True, he must be held to a high degree of accountability *512 for his actions, but this is not to say that he must consider his interest as a beneficiary less than the interest of defendants because of his appointment as executor. He must, of course, proceed with the utmost good faith in the discharge of his duties, but absent bad faith, the mere fact that the distribution in kind upon fair valuations will result in incidental benefits to him is no basis for substituting the judgment of defendants or of this court for that of plaintiff, especially where, as here, unrestrained discretion was placed in him by the testator's voluntary affirmative act.
In Rosencrans v. Fry, supra, 12 N.J. at page 102, the court said:
"Here, too, Fry's performance of his duties as trustee must be appraised in conjunction with the propriety of his performance as a director of the company. The conflict of interest, if any, arising out of these duties was created not by Fry but by the testator, in accordance with whose wish Fry was elected president of the corporation and by whose will he was named co-trustee. His conduct must be evaluated in the light so given.
By the terms of the trust, the trustee may be permitted to do what, in the absence of such a provision in the trust instrument, would be a violation of his duty of loyalty. Scott on Trusts, sec. 170.9, p. 871."
There is no merit to defendants' argument that plaintiff has breached a fiduciary duty.
There is insufficient information in the record for an intelligent consideration of the values of Fiedler-Hollister, Inc., stock, concerning which corporation there has been considerable litigation. Hollister v. Fiedler, 18 N.J. Super. 171 (Ch. 1952), 22 N.J. Super. 439 (App. Div. 1952); 30 N.J. Super. 203 (App. Div. 1954); modified 17 N.J. 239 (1955). In the last cited opinion of the Appellate Division the court found plaintiff entitled to an accounting. We cannot undertake a determination of the fairness of the assigned value of the stock of Fiedler-Hollister, Inc. until such accounting is had. There is strong basis in the record to suspect a true value higher than the $2,200 assigned value. No distribution should be made until the receipt *513 and confirmation of such final account, which should be concluded as speedily as is possible. Thereupon plaintiff shall file a supplemental schedule of distribution, making due revised allowance for the value of that stock.
There is also some doubt as to the value of the stock of Fiedler, Inc. By way of pretrial amendment of the schedule of distribution, plaintiff has assigned three and one-third shares of stock of Fiedler, Inc. (a one-third interest) to himself, at no value. He has for some years owned an additional three and one-third shares in his own right. Fiedler, Inc. operated a licensed real estate brokerage business for some years prior to testator's death. This business was continued until 1956. Its annual income for the years 1950 to 1955 ranged from $1,759.22 to $9,722.01. Both plaintiff and his secretary were paid salaries by Fiedler, Inc., from the time of testator's death to the filing of the final account herein. Plaintiff explains his desire to obtain these shares of stock by stating that he wishes to perpetuate the name of his father. This is a commendable purpose. However, under the circumstances, he must be most circumspect in assigning values to assets which he has allotted to himself. In the light of the paucity in the record of adequate information concerning Fiedler, Inc., the defendants should be accorded further opportunity to explore the value of that stock by way of discovery proceedings. To that end, we grant leave to defendants to proceed expeditiously with such a proceeding, so that the trial court may have the benefit thereof when passing upon the supplemental and revised schedule of distribution. Upon the presentation of a supplemental schedule of distribution, the trial court shall resurvey the situation, in light of the foregoing, to ascertain whether it is fair and equitable.
Reversed and remanded for further proceedings not inconsistent with the foregoing.