Nicola Latorraca died June 16th, 1940, leaving a lengthy last will and two codicils, drawn by himself without the aid of counsel, and containing many perplexing directions.
The will begins with a statement of the properties which testator owned. First mentioned are two parcels of land "controlled and owned by the corporation of Nicola Latorraca *Page 42 
of which I am the sole owner." Later in the will interests in one of the parcels are devised by language which would be more apt if title had been vested in the testator, instead of the corporation. All the corporate stock is now in the hands of the executor. He will be directed to cause the corporation to take such action as may be suitable to carry out the testator's intention in respect to the land, safeguarding, of course, any creditors of the company. Fidelity Union Trust Co. v. VanderRoest, 113 N.J. Eq. 368. "One-man Corporations," 51 Harvard L.R.1373 (at p. 1397).
Next listed is "the firm of `Latorraca Bros.'" This was the trade name under which testator conducted a wholesale grocery business in New York City. The capital invested in the enterprise constitutes the major part of the estate. Directions for the conduct of the business, distribution of the income and eventually of the principal, make up a large part of the will. Some time after the will and codicils were published, testator caused a corporation to be formed, Latorraca Brothers, Inc., transferred to it his grocery business, and took in exchange all the capital stock of the corporation. Should the executor and trustee under the will, through his control over the corporation, fulfill the directions of the testator respecting the grocery business, or are those provisions of the will nullified? Are the corporate shares mere general assets of the estate, to be converted into money and used in meeting administration expenses, general and residuary legacies? The will contains specific bequests of some things pertaining to the business and which belonged to testator when he made his will but which now are the property of the corporation — for example, the trade-marks. Since the rules governing specific bequests are more stringent than those dealing with other gifts, the question may well be considered from that standpoint.
Where the subject of a specific legacy is stolen from testator, let us say, and never recovered, the executor is unable to deliver it to the legatee and the bequest is gone. This results from the actual loss of the thing bequeathed rather than from any supposed intention of the testator. Wyckoff v. Perrine'sExecutors, 37 N.J. Eq. 118. Where testator, after making *Page 43 
his will, sells the thing bequeathed, the legacy is likewise lost, although the court is apt to reason that the sale evidences testator's intention to revoke. Then there are cases in which the subject of the gift is retained by testator until his death, somewhat changed in form, yet substantially the same thing. In such event, the legacy does not fail; there is no ademption.Chase National Bank v. Deichmiller, 107 N.J. Eq. 379; Note in117 A.L.R. 811. In the suit before me, there has been no loss of the things given, no change in their form or substance. The only change has been in the manner in which testator exercised dominion. He had legal title at the date of his will; at his death, he owned the corporation which had title. This alteration does not render the excutor unable to execute the specific bequests or to carry out the testator's other directions respecting the business, since he controls the corporation, and it does not indicate a change in testamentary intention. The executor will be instructed to fulfill the provisions of the will relating to the business as fully as if the corporation had not been formed.
The executor's brief suggests the advisability of dissolving the two corporations, above mentioned, in order to reduce income taxes. But since neither pleadings nor proofs contain anything on the subject, no instructions relative to dissolution can now be given. The executor may bring up the matter by petition in the cause and it will be disposed of in a summary manner.
The testator further listed as assets of his estate certain insurance policies on his own life. The proceeds of the policies are not specifically bequeathed by the will, nor made the primary fund for payment of a demonstrative legacy, as in Fort v.Edwards, 32 N.J. Eq. 641. After the will was executed, Mr. Latorraca had three of the policies aggregating $20,000, which had been payable to his estate, amended so that his widow receives the income and can draw out most of the principal. Upon her death or remarriage, any amount remaining with the company is payable to the children of testator. The testator also procured a new policy, payable in monthly installments of $43, to Mrs. Latorraca over a period of 30 years. *Page 44 
The will gives one-third of the income of the estate to the widow for life subject to certain limits and conditions which are considered below. The question is raised whether the insurance payable to the widow should go to reduce her share of the income under the will. In certain cases, a gift inter vivos by a testator to a legatee is considered to be made in substitution or in satisfaction of the legacy. Thus, if a testator, who has given by his will a legacy for a specified particular purpose, himself afterward executes the purpose in his lifetime, he is presumed to have intended to cancel the legacy. Taylor v. Tolen, 38 N.J. Eq. 91.
In that case, there was a legacy "to pay the debt on Belmont Avenue Chapel." Subsequently testator paid off the debt and it was held that the bequest was satisfied. In the case before me, while the income bequeathed Mrs. Latorraca is undoubtedly intended for her support, it was not given her for a particular purpose within the meaning of the rule. Again, where there are legacies to several children of the testator and afterwards the testator makes a gift of the same kind to one of them, there is a presumption that the gift was in satisfaction of the legacy in whole or in part. Sims v. Sims, 10 N.J. Eq. 158.
But the presumption applies only between parent and child.2 Pom. Eq. Jur. §§ 552 and 562. There is no presumption that testator's gift to his wife is made in satisfaction of a bequest to her. And in the instant case, nothing in the instruments themselves, the amendments of the policies, indicate that such was Mr. Latorraca's intention. See 2 Pom. Eq. Jur. 563. The insurance does not affect the provision for Mrs. Latorraca under the will.
The last of the assets which testator describes as part of his estate, is "all jewelry in the possession of my wife." The will leaves to the widow "her jewels which she is using to-day," for life, subject to certain conditions, and then to his daughters. The widow alleges title to all the jewelry independent of the will. The question is whether she must elect. "The illustration of this doctrine, which is pertinent to the subject under discussion in this case, is where A, by his will, gives to B property which belongs to C, and by the same instrument gives to C other property which belongs *Page 45 
to the testator. In such a case, a court of equity will put C to an election to take under the will and give effect to all its provisions. Or if he choose to stand upon his property rights against the testator's disposition, equity will compel him to make compensation to the other beneficiary to the extent of indemnifying the latter for the loss he sustains by such election, not exceeding, however, the benefits the former receives under such testamentary disposition." Hattersley v.Bissett, 51 N.J. Eq. 597; 1 Pom. Eq. Jur. § 477.
As to the jewelry owned by Mrs. Latorraca at the date of the will, January 15th, 1931, she must elect whether to assert her absolute title or to give effect to the provisions in the will for the benefit of the children. She need not elect as to after acquired jewelry or as to the insurance for, as the case last cited points out, the doctrine of election does not apply when the title of the legatee arises after the execution of the will from a gift of testator or otherwise.
By the will, the widow is given a share of the income of the estate for life, as well as the right to reside in the family home and to use the jewels, "on condition that she conform to the provisions concerning her herein set forth in this will. * * * My wife Ofelia, in order to be entitled to her share or shares set forth for her in this will, must never remarry. She must never live with her mother, her sisters, her brothers, her grandparents or with any of her other relatives in my family home, not even for a single night, nor can she lead a dishonorable and dishonored life." The widow argues that this provision is against public policy and void.
First, as to the remarriage of the widow. "The general rule is, that a condition in restraint of marriage in general, or of marriage to any person whatever is void, and the devise or bequest takes effect. But anyone may limit a gift to his wife to her widowhood, or may annex a condition that it shall go over on her marriage; this is a well-established exception to the rule."Graydon's Executors v. Graydon, 23 N.J. Eq. 229; 25 N.J. Eq. 561.
See, also, Mann v. Jackson (Me.), 24 Atl. Rep. 886.
Our reports contain scores of cases in which the exception to the rule has been followed, as of course and without comment. Counsel for the widow necessarily admits *Page 46 
that a gift of income to testator's widow may be limited to the period during which she will probably most need it, namely, while she remains a widow. But he urges that where testator's purpose is to induce his widow not to remarry, the condition is void. The law makes no such distinction; in this instance the court cannot, and does not, attempt to probe testator's mind and determine his object in making provision for his widow and in terminating her estate upon remarriage.
The widow further contends that the condition against her mother and other relatives living with the widow at testator's home is void because it tends to disrupt the family. GirardTrust Co. v. Schmitz, 129 N.J. Eq. 444. It will be observed that Mr. Latorraca does not forbid his wife to visit her family, or to entertain them; but only bans their living at his home "even for a single night." The proofs show that testator was on friendly terms with his wife's folks. What purpose he had in formulating this provision of his will is not clear. Perhaps he feared that his children, in their own home, might come to take second place to his wife's kindred. But be that as it may, the condition under discussion does not tend substantially to disrupt harmony between the widow and her relatives.
The conditions which limit the gift to the widow are valid. The executor asks what measures he should take to ascertain that the conditions remain unbroken. None. He may safely proceed on the basis that there is no breach, until he receives notice, or happens to acquire knowledge to the contrary. In such event, he should ask further instructions from the court.
All the litigants agree, and I concur, that articles 18 and 25 of the will are mere precatory expressions of the testator without legal or binding effect.
To testator's widow and to his two minor daughters is given "the right to live and reside free of charge, without paying any expenses, in my family home." They also have the use of the furnishings. What testator meant by expenses appears from another paragraph of the will in which he directs his executors to pay "the expenses of keeping up my family home, taxes, heating, gas, electricity, expenses for repairs, and so forth." I anticipate no difficulty will arise *Page 47 
from this provision, except perhaps in small details. The executor should himself pay taxes and infrequent items such as insurance premiums and the cost of painting the house. Bills for minor repairs and water, electricity, gas, c., may be paid in the first instance by Mrs. Latorraca who will then be reimbursed by the executor. Telephone service and domestic servants do not come within this provision of the will.
The firm — now the corporation — of Latorraca Brothers is required to furnish groceries "to my family or to the family home" not to exceed $350 per year at cost price to the firm. Groceries may be supplied on the order of Mrs. Latorraca, as the head of the family. If the requirements of the household do not amount to $350 in any one year, the unused credit lapses and is not added to the credit for the succeeding year.
I now come to the testator's directions with relation to the grocery business and the distribution of income. His controlling intention was simple and is easily stated. The grocery business is to be continued until his son Joseph's thirty-first birthday, which will be October 30th, 1947. Then the business is to be liquidated and from the proceeds and the other assets of the estate (except the family home) are to be set up two trusts, one to maintain the home, the other to support the widow. Meanwhile, the income of the estate, including profits from the business, is to be used first to pay the upkeep of the family home, and the balance up to $4,500 yearly is to be divided one-third to the widow and two-thirds to or for the children. Any excess income is to be accumulated. If the widow's share of income falls below $1,250 in any year, she is to be paid out of corpus, or accumulated income, enough to make up that sum. In stating these figures, I have given effect to the codicils.
Testator gives "to the trustees the right to distribute" the children's two-thirds "in such manner as they deem just and reasonable and according to the relative individual necessities of these three children of mine." "If, by reason of a real necessity" the shares of the three children must be unequal "no one shall have the right to object." Three executors and trustees are named, but only one has qualified. He has full *Page 48 
authority to exercise the power given by this provision of the will. Weimar v. Fath, 43 N.J. Law 1; 1 Rest. Trusts § 195. So long as the trustee uses his discretionary power in a sound and honest manner, the court will not interfere. Read v.Patterson, 44 N.J. Eq. 211; O'Gorman v. Crowly, 80 N.J. Eq. 101; 81 N.J. Eq. 520.
The will directs that not more than $80,000 capital must be used in the grocery business, and that the business must pay six per cent. on the capital employed. The injunction against expanding the business beyond $80,000 should, of course, be observed. Indeed, there should be no unnecessary expansion at all, but rather a withdrawal of capital in preparation for liquidation. But these provisions of the will and others of a similar character are subordinate to the gifts of income already summarized. Whatever the corporation owns belongs in equity to the beneficiaries under the will; whatever it earns whether more than six per cent. or less, must be distributed or accumulated, in accordance with the formula I have stated.
The only executor and trustee who has qualified is testator's cousin, who bears the same name, Nicola Latorraca. Mr. Latorraca was an employee of testator in the grocery business, and the will directs that he and two other employees should be retained and paid certain salaries and bonuses. By a codicil, the executors are given discretion whether or not to retain the three employees and at what salaries. Mr. Latorraca, the executor, has been in charge of the business since his cousin's death. Since he is the sole acting executor, he asks for the instructions of the court in respect to his employment. He should elect himself a director, president and general manager of the corporation. Generally an executor is not entitled to compensation above the statutory rate for carrying on the business of his testator. In re Larrabee,98 N.J. Eq. 655; Note to 66 A.L.R. 512. But that rule does not govern the present case for the will plainly authorizes the additional pay.
When the decree is presented to me, I will hear counsel as to the amount of compensation for services in the grocery business. In calculating his commissions as executor and *Page 49 
trustee on income under R.S. 3:11-2, Mr. Latorraca should include, besides gross income from other sources, only the net income from the business.
Testator intended that when his son should reach the age of 25 years, he should take part in the management of the business. To carry this into effect, the son, who is now 25, should be elected a director. The executor may use his discretion in appointing a third director.
The will authorizes the trustees, when testator's son reaches 25 years, "to pay to my three children the sum of $5,000 each, provided, however, there is enough money in addition to the trust fund or reserve fund to be set aside for my wife (should she then be entitled thereto) and further, upon condition that there should be sufficient funds to provide an income of $7,500 a year after deducting the expenses for the maintenance of the family house." The mention of an income of $7,500 a year undoubtedly refers to an earlier passage in the will by which the trustees were directed to pay the widow $2,500 a year and the children $5,000, until the son becomes 31 years of age. These amounts were reduced by the codicil to $1,500 for the widow and $3,000 for the children. So the figure of $7,500 in the passage quoted should be taken as amended to read $4,500. From a consideration of the whole will and the codicils, I have concluded that testator intended that the three $5,000 legacies shall be payable only (1) if there will remain in the estate after paying the legacies, assets that will probably yield an annual income until the son should reach age 31, sufficient to maintain the home (estimated at $1,300) and provide for widow and children $4,500, or $5,800 in all; and (2) if it appears likely that upon liquidation of the business six years later, the assets of the estate, exclusive of the home, will be sufficient to buy securities to yield an income of $1,300 for the upkeep of the home and $1,500 for the wife, or $2,800 in all.
The grocery business is currently earning considerably more than $5,800 a year, and while the future is, of course, uncertain, I think the first condition is met, provided the legacies can be paid without touching the business. But when the business is liquidated, the capital which now brings in *Page 50 
more than six per cent., will upon reinvestment yield a much smaller percentage. I will assume that it will require $75,000 to set up trusts which will yield $2,800 a year. The executor has not yet settled his account, but expects to do so shortly either in this court or the Orphans Court. When the account shall have been settled and the expenses of administration determined, it will be possible to give the executor definite instructions with respect to these legacies.
The executor requests numerous instructions as to his actions in the event of sundry contingencies and as to his duties when the time comes in 1947 to liquidate the business. The contingencies may never happen and the situation may so change before 1947 that instructions given to-day would be of little value. There is one matter, however, which should be clarified now in order that the parties may make suitable preparations, and that relates to the question whether testator gave to his son any interest in the business beyond what has already been mentioned.
"When my son Peppino [a pet name] shall arrive at the age of 31 years, he shall become the sole proprietor and owner of the trade-marks, name, exclusive rights, c., except of the capital and surplus in the firm," on certain conditions which need no discussion at this time. Testator hoped that his son would enter the wholesale grocery business and to that end gave him the right to the name "Latorraca Brothers" and the good will, c. The term "exclusive rights" probably means contracts for the exclusive distribution of certain brands of groceries. Perhaps it includes the lease of the premises where the business is conducted. Testator did not, however, give his son any of the capital or tangible property or accounts receivable of the firm. The son must start in a small way on credit or with such capital as he can scrape together. *Page 51