WILLIAM H. COURTNEY, PLAINTIFF-RESPONDENT, v. MILDRED HANSON ET AL., DEFENDANTS-RESPONDENTS, AND, LESTER HANSON, SR., ET AL., DEFENDANTS-APPELLANTS.

Argued November 28, 1949—Reargued December 19, 1949—Decided February 6, 1950.

*Mr. Ralph W. Chandless* argued the cause for the appellants (*Messrs. Chandless, Weller, Kramer & Frank,* attorneys).

*Mr. Nathan N. Schildkraut* argued the cause for the defendants-respondents (*Mr. Albert B. Kahn,* attorney).

The opinion of the court was delivered by

VANDERBILT, C. J. The controversy here involves a dispute between the administrator of William Hanson, deceased, and his heirs at law as to the surplus moneys arising from the foreclosure sale of real estate owned by the decedent. On January 7, 1947, the decedent and Carle H. Daube entered into a contract whereby the decedent agreed to sell and Daube to purchase for $25,805 a factory building and site in Hamilton Township owned by the decedent, on which there were two mortgages for $7,000 and $3,000, respectively. Hanson died on January 27, 1947, but prior thereto he and his wife executed a deed to the property and delivered it to their attorney in escrow. The sale was not consummated on February 1, 1947, the date set in the contract for the closing of title, but nevertheless, Daube took possession of the premises on or about February 1, 1947, and is still in possession.

Due to a controversy between the widow, Mildred Hanson, and the decedent's children, Grace Hanson, Lester Hanson, Sr., Richard Hanson and Ruth Tuma, over the administration of the estate, which consisted principally of the property in question, the Mercer County Orphans' Court on August 26, 1947, appointed Monroe Levy as a disinterested administrator *pendente lite.* In the interim Lester Hanson, Sr., declared himself ready and able to deliver a deed to the premises but Daube refused to accept it. After the appointment of Levy, Lester Hanson, Sr., filed a bill to partition the property. Daube, although conceding his willingness to take a valid deed, counterclaimed in this suit for a decree cancelling the contract of sale and Levy filed a plea in bar claiming that by virtue of the contract the decedent did not die seized of the property. Hanson's motion to strike this plea was denied and the partition suit does not appear to have been pressed thereafter. On December 7, 1947, the Mercer County Orphans' Court on Levy's application granted him authority to deliver a deed to Daube but the latter refused to accept it.

In the meantime the plaintiff on November 25, 1947, commenced the present suit to foreclose the second mortgage of $3,000 on the property. Lester Hanson, Sr., thereupon offered to contribute his share toward redeeming the property from the mortgage contingent on the other heirs and the administrator contributing proportionately. This scheme falling through, the foreclosure suit proceeded and a writ of *fieri facias* for the sale of the premises issued on March 11, 1948. Thereafter three of the four children, Lester Hanson, Sr., Richard Hanson and Ruth Tuma, conveyed their interest in the premises to Peter R. Del Vecchio, who purchased the decree from plaintiff and took an assignment thereof. Del Vecchio kept adjourning the foreclosure sale until August, 1948, when he was forced to sell by reason of the plaintiff herein having commenced to foreclose the first mortgage of $7,000. At the sale on the foreclosure of the second mortgage Daube, who had originally contracted to purchase the property for $25,805, bought in the premises for $12,100 subject to the $7,000 first mortgage, with interest, costs in the suit to foreclose said mortgage and taxes and penalties amounting

to $902, thus effecting a substantial saving over his original purchase price.

The foreclosure sale resulted in a surplus of $8,160.61, which is sought by the administrator *pendente lite* on the one hand and by the heirs, three of them through Del Vecchio, on the other. First the trial court and then the Appellate Division of the Superior Court awarded the fund to the administrator. The case comes before us on the petition for certification of Del Vecchio and his grantors which we granted. Two sets of briefs have been filed and the appeal has been argued twice.

■ Under well settled law, here and elsewhere, an equitable conversion took place on the making of the contract on January 2, 1947, between William Hanson and Carle H. Daube, Daube becoming the equitable owner and Hanson becoming entitled in equity to the purchase price, *Haughwout and Pomeroy v. Murphy*, 22 *N. J. Eq.* 531, 546 (*E. & A.* 1871), and the many cases following the rule there laid down; 4 *Pom. Eq. Jur.* (*5th Ed.*) 479, § 1161. The justification of the doctrine of equitable conversion is that it gives effect to the manifest intent of the parties, 4 *Ibid.* 472, § 1159. Here the vendor manifested his intent to part with his real estate and to acquire money not only by making the contract but also by executing with his wife a deed to the property and by delivering it before his death to his attorney in escrow. Once the doctrine of equitable conversion is applied, it is carried forward consistently, with the result that on the vendor's death his personal representative became entitled to the purchase money, 4 *Ibid.* 489, § 1164.

Although the appellants asserted other grounds below, they here urge that the doctrine of equitable conversion was defeated by the decree of foreclosure and they insist that the administrator *pendente lite* is estopped to claim the surplus moneys arising from the foreclosure sale because of his failure to bring a suit against the purchaser to compel specific performance of the contract.

■ The decedent did nothing up to the time of his death to change his clear intent as manifested by his execution of

the deed and his delivery of it in escrow. The mere fact that after his death a foreclosure occurred, with the result that surplus funds came from the foreclosure sale instead of the contract price directly from the purchaser, does not alter in the slightest degree the intent of the vendor. The situation is precisely the same as if a suit had been brought to compel the purchaser to perform the contract specifically and he had been unable to pay the purchase price in full.

The appellants rely on *Teneick v. Flagg,* 29 *N. J. L.* 25 (*Sup. Ct.* 1860), overlooking the fact that the *Teneick case* was a suit at law and failing to recognize that the law courts do not enforce the doctrine of equitable conversion, which is peculiarly a rule of equity. The *Teneick case* was readily distinguished in *Keep v. Miller,* 42 *N. J. Eq.* 100 (*Ch.* 1886). In the *Keep case* the question before the court was whether there had been a conversion, even though it had been decided in previous litigation, *Miller's Adm'r v. Miller,* 25 *N. J. Eq.* 354 (*Ch.* 1874); reversed, 27 *N. J. Eq.* 514 (*E. & A.* 1875), that, while the contract had been a valid one, laches barred specific performance. In the *Keep case* Chancellor Runyon approved the rule that the equitable rights of the next of kin of the vendor are not defeated even where the vendee, by his laches, after the death of the vendor, loses his right to specific performance, provided the contract was enforceable in equity at the death of the vendor, 42 *N. J. Eq.* 100, at 107.

Although the appellants urge that the foreclosure operates as a reconversion, they are quite unable to find support for this position in the cases. This is not surprising considering the statement in 4 *Pom. Eq. Jur.* 509 § 1175, to the effect that "Reconversion is the result of an election expressly made or inferred by a court of equity. It depends wholly upon the right of election held by the person entitled to the property to choose whether he will take the property in its converted condition or in its original and unconverted form." As defendants-respondents are the ones who would take in the event of a single conversion, the appellants do not appear to be in a position to assert a reconversion.

Nor can the failure of the administrator to sue the purchaser for specific performance estop the administrator in his official capacity, wherein he represents not only the non-contesting next of kin but also the creditors, from claiming, the surplus moneys from the foreclosure sale. The rights, if any, of the heirs and next of kin against the administrator for failing to sue the purchaser for specific performance, after they themeslves had made a difficult situation even more involved, would be heard on objections to his accounting; these claims have no proper place in the present litigation in which he appears solely in his representative capacity.

No proceedings have ever been brought against Daube to compel him to pay the purchase price under the contract, although he was named as a defendant in the partition proceedings, the foreclosure suit and the two petitions for surplus moneys. He has not participated in this appeal, nor has there been any direct demand against him for the payment of the purchase price in the present proceedings. The defendants-respondents in their supplemental brief for the first time urge that the court should conclude the litigation by modifying the judgment below to compel Daube to pay the balance due under the contract without having sought such relief at any stage of the proceedings. For us to grant such relief at this late date would require the litigation here of an issue that was not before the trial court or before the Appellate Division of the Superior Court and which Daube has not been cited to answer. Clearly, this is not the kind of situation contemplated by Article VI, Section V, paragraph 3, of the Constitution, or by *Rule* 1:4–10.

The judgment below is affirmed and the application of the defendants-respondents for a modification of the judgment is denied.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.