17 N.J. Super. 523 (1952)
86 A.2d 454
IN THE MATTER OF THE ESTATE OF BERNARD R. ARMOUR, DECEASED.
Superior Court of New Jersey, Chancery Division.
Decided January 31, 1952.
*525 Messrs. Winne & Banta, attorneys for the guardians ad litem.
Messrs. Milton, McNulty & Augelli, attorneys for Martha S. Armour.
Messrs. Toner, Speakman & Crowley, attorneys for George L. Armour.
Messrs. Carpenter, Gilmour & Dwyer, attorneys for the executors.
GRIMSHAW, J.S.C.
In this action, the court is asked to construe the will of Bernard R. Armour, who died December 1, 1949, a resident of Bergen County. The plaintiff executors seek a judgment that under a proper construction of the 12th paragraph of decedent's will, George L. Armour, the decedent's brother, who is also one of the executors, has the right to purchase 99,339 shares of stock of American Aniline Products, Inc. Also sought is a determination that the price to be paid for the stock is its book value as of December 31, 1949, the year of testator's death, which book value shall not include any valuation of patents, goodwill, *526 bank deposits, accounts receivable and investments in securities.
All parties in interest were served with copies of the complaint and the order to show cause issued thereon. The only response was from the guardians ad litem of the infant children of the testator, who are his residuary legatees. In their answer the guardians assert that there was an ademption of the legacy or option given to George L. Armour, in so far as it applied to 99,000 shares of American Aniline stock. And they also contend that in a determination of the book value of the stock, consideration must be given to the value of bank deposits, accounts receivable and securities. In view of a possible conflict of interest, George L. Armour applied for and was granted leave to appear individually and be represented by counsel of his own choosing.
The paragraph of the will about which the dispute centers is as follows:
"Twelfth: I hereby give my brother, George L. Armour, the privilege and right at any time within one (1) year from the date of my death to purchase all the shares of stock of American Aniline Products, Inc. which I may own at the time of my death, at a purchase price equal to the book value of said shares of stock, such book value to be determined by an inventory taken and balance sheet struck at the end of the fiscal year of said corporation during which my death shall occur, and such book value to be determined without including any valuation whatsoever for patents, goodwill or other intangible assets of the said corporation. I direct my executors and trustees to sell the said shares of stock to my said brother upon such terms as my executors and trustees may, in their sole discretion determine in the event that he should, within the period of one (1) year after my death, elect to purchase the same.
Subject to the foregoing provisions of this Article TWELFTH, it is my wish that my executors and trustees should continue to hold intact, so long as in their discretion it shall seem practicable or advantageous, my interests in the following companies: Heyden Chemical Corporation, American Aniline Products, Inc., Charles Hellmuth, Inc. and the Siegle Color Division of Ansbacher-Siegle Corporation, or any successor corporations, but in expressing this wish I do not desire to hamper or restrict my executors and trustees, in the exercise of their absolute discretion, in selling or otherwise disposing of any such interests at such time and upon such terms as they may deem proper."
*527 In approaching the problem of will construction it is necessary for us to keep in mind that the court's duty is to seek to ascertain the testator's intention and to carry it out if that intention be legal. The testator's intention, when ascertained, must prevail and should control all presumptions and assumptions. Donath v. Shaw, 132 N.J. Eq. 545 (Ch. 1942); Bottomley v. Bottomley, 134 N.J. Eq. 279 (Ch. 1944). That intention must be found in the language used in the will considered in the light of the attendant circumstances. While extrinsic evidence is not admissible to vary, enlarge or contradict the terms of the will, it is admissible to place the construing court so far as possible, in the situation of the testator at the time when he executed the will. "For the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will." Noice v. Schnell, 101 N.J. Eq. 252 (E. & A. 1927); In re Fox, 4 N.J. 587 (1950).
Bernard R. Armour was a man of great wealth. His interests were many and varied. Prominent among those interests was American Aniline Products, Inc., a highly profitable enterprise which Armour controlled. At the time of the execution of the will on February 24, 1944, that corporation had an authorized capital of 100,000 shares, of which 99,719 had been issued. Of these shares 281 were in the company treasury, 318 were registered in the name of George L. Armour and 99,339 were registered in the name of Bernard R. Armour.
There can be no doubt that had Bernard Armour died before 1948, George L. Armour would have had the right *528 to purchase the 99,339 shares of American Aniline stock standing in Bernard Armour's name. Such is the clearly expressed meaning of paragraph 12 of the will. It remains to be seen whether, as a result of subsequent events, there was an ademption of this right or legacy.
"A legacy which is specific is adeemed when the particular thing given is wholly lost or destroyed; or is disposed of by the testator during his life; or is so altered by him in its form as to indicate a change of testamentary purpose on his part, an intentional partial revocation of his will." In re Cooper, 95 N.J. Eq. 210 (E. & A. 1923). But where the subject of the gift is retained by the testator until his death, somewhat changed in form yet substantially the same thing, the legacy does not fail and there is no ademption. Latorraca v. Latorraca, 132 N.J. Eq. 40 (Ch. 1942), affirmed 133 N.J. Eq. 298 (E. & A. 1943).
In 1948 American Aniline Products, Inc., was paying heavy dividends. Bernard Armour, in consultation with his personal attorney, expressed concern over his mounting income taxes and suggested that the Aniline stock, for the purpose of minimizing taxes, be transferred to Sterling Chemicals, Inc., a corporation of which Bernard Armour owned all of the stock. This was done. 99,000 shares of the Aniline stock were transferred to Sterling Chemicals, Inc., and 339 shares remained in the name of Bernard R. Armour. Later, when it appeared that the Sterling Company was in danger of being considered by the taxing authority to be a personal holding company, it was consolidated with another of Armour's wholly-owned companies, Ore & Chemical Corp., which company had income other than that received from Armour's personal securities. The consolidated corporation was known as Sterling Ore & Chemical Corporation. Bernard R. Armour owned all of its outstanding stock.
At the time of Armour's death there were registered in his name 339 shares of American Aniline Products, Inc. The balance of 99,000 shares were registered in the name of *529 Sterling Ore & Chemical Corporation. From these facts the guardians argue that there was a partial ademption of the option granted to George L. Armour under the 12th paragraph of the testator's will. They say that the option is restricted to the 339 shares of American Aniline stock registered in Bernard Armour's name at the date of his death.
It appears, however, that when the American Aniline stock was transferred to Sterling Chemicals, Inc., the certificate for 99,000 shares in the name of that corporation was delivered to Bernard Armour personally. Later, when Sterling Chemicals was consolidated with Ore & Chemical Corporation, Armour surrendered to American Aniline Products the Sterling certificate and received in return a certificate for 99,000 shares made out in the name of Sterling Ore & Chemical Corporation, the consolidated company. This latter certificate was found among Armour's personal securities in his private safe after his death.
The right to purchase the American Aniline stock given to George L. Armour under the 12th paragraph of the will covered all of that stock "which I may own at the time of my death." In my opinion, at that time, Bernard R. Armour owned the 99,000 shares of American Aniline stock registered in the name of Sterling Ore & Chemical Corporation as well as those registered in his own name. Through his ownership of all of the outstanding stock of Sterling Ore & Chemical Corporation, Armour's ownership of the 99,000 shares of American Aniline stock standing in the name of that company was as complete and effective as it was when the will was drawn.
Evidence was offered of negotiations by Armour in 1947 for the purchase of a controlling interest in another chemical company. During a discussion of ways of financing the purchase it was suggested that the American Aniline shares be transferred to a corporation which could be used as a means of raising capital. From this it is argued that the transfer to Sterling was made for the purpose of financing the proposed purchase and not to minimize taxes. And there *530 is sought to be spelled out an intent to revoke George Armour's option. The argument is without merit. The deal had fallen through before the transfer to Sterling was made. And even if it had not, the testimony only serves to emphasize Bernard Armour's control of the American Aniline stock.
George Armour was associated with the testator in a number of his enterprises. But most of George's time and effort was devoted to American Aniline Products of which he had been the executive vice-president for 20 years. He and the testator were very intimate. And it is only natural that Bernard Armour should provide an opportunity for his brother to purchase control of the corporation which George Armour had served so long. Such was the clear intent of the testator as expressed in the will. Nothing in the history of the American Aniline shares following the execution of the will can give rise to a conclusion that there was a change in the testamentary purpose of the testator. And this court will give effect to that purpose. Fidelity Union Trust Co. v. Roest, 113 N.J. Eq. 368 (Ch. 1933).
There remain for determination the elements which shall be taken into consideration in arriving at the amount of the purchase price for the stock. The testator provided that the stock should be sold to George L. Armour for a price equal to the book value of the stock "without including any valuation whatsoever for patents, goodwill or other intangible assets of the said corporation." Both parties insist that the use of the words "other intangible assets" does not create a latent ambiguity. Yet the contention of the plaintiffs is that by the use of the words "other intangible assets" the testator intended that in arriving at the book value of the American Aniline stock the executors should give no consideration to bank deposits, accounts receivable, or investments in securities. The guardians, on the other hand, insist with equal vehemence that in the accounting profession bank deposits, accounts receivable and investments in securities are not considered to be intangible assets, and, therefore, in *531 the calculation of the book value of the stock, consideration must be given to those elements of value.
This difference of opinion as to the meaning of the words "intangible assets" as used by the testator strongly suggests the existence of a latent ambiguity. That being so, extrinsic evidence is admissible to resolve that ambiguity. Griscom v. Evens, 40 N.J.L. 402 (Sup. Ct. 1878), affirmed 42 N.J.L. 579 (E. & A. 1880). And in order to ascertain what the testator meant by the words which he used in his will, parol testimony concerning statements made by him is admissible. Paul v. Paul, 99 N.J. Eq. 498 (Ch. 1926); Bottomley v. Bottomley, supra. See, also, In re Gluckman's Will, 87 N.J. Eq. 638 (E. & A. 1917).
The words "intangible assets" have long had a clear and well understood meaning in the law, a meaning which has been constantly reiterated by the courts. They refer to that kind of property which, while having no intrinsic value, is evidence of a right or claim against some person or corporation. Intangible assets, in other words, are choses in action. In this category are placed bank accounts, stocks and bonds and accounts receivable. Newark Fire Ins. Co. v. State Board of Tax Appeals, 118 N.J.L. 525 (Sup. Ct. 1937), affirmed 120 N.J.L. 224 (E. & A. 1938), affirmed 307 U.S. 313; Central Hanover Bank & Trust Co. v. Martin, 129 N.J. Eq. 186 (Prerog. 1941), affirmed 127 N.J.L. 468 (Sup. Ct. 1942), affirmed 129 N.J.L. 127 (E. & A. 1942), affirmed Central Hanover Bank & Trust Co. v. Kelly, 319 U.S. 94; Household Finance Corp. v. State Board of Tax Appeals, 119 N.J.L. 230 (Sup. Ct. 1937).
In order to conclude that the testator, in using the words "intangible assets," intended them to have a meaning other than the usual one, we must look to extrinsic evidence for support. The record fails to supply that support.
On the contrary, such extrinsic evidence as there is sustains the conclusion that the testator used the words "intangible assets" in their ordinary legal sense. Mr. Lewis, who drafted the will, testified that when Armour was about *532 to execute the will he questioned the term "intangible" and was reminded by Lewis of a tax case in the State of New York, involving the Heyden Chemical Corporation, a company in which Armour was heavily interested. In that case, People ex rel. Heyden Chemical Co. of America, Inc., v. Law, 249 N.Y. 193 (1928), the Court of Appeals of that state had determined that bank accounts were intangible. He said that the testator, in response, said, "O.K., George." It was also shown that shortly before he executed the will, Armour signed for American Aniline Products, Inc., a corporate excise return for the State of Massachusetts, which return listed cash, accounts receivable and securities among the intangible assets of the corporation.
I am of the opinion that when the testator used the words "intangible assets" in the 12th paragraph of the will he used them in their ordinary legal sense. In other words, the testator intended that his executors, in determining the book value of the American Aniline stock, should give no consideration to bank deposits, accounts receivable and investments in securities.
I have concluded, therefore, that under the 12th paragraph of the will of Bernard R. Armour, George L. Armour is entitled to purchase 99,339 shares of American Aniline stock owned by the decedent. I am further of the opinion that the executors, in determining the book value of the stock, are not to give any consideration to bank deposits, accounts receivable, or investments in securities.
During the course of the hearings attempts were made by innuendo and insinuation to persuade the court that the executors were engaged in a conspiracy to aid George L. Armour at the expense of the residuary legatees. Under the circumstances I think it only fair to say that the record is devoid of the slightest evidence of improper conduct on the part of any of the executors, including Mr. Armour.
Judgment in accordance with the views expressed above.