Dublin Estate.

Argued October 7, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Elder W. Marshall*, with him *Harry A. Estep, Carl E. Glock, Jr.,* and *Reed, Smith, Shaw & McClay* for appellants.

*William H. Eckert*, with him *Smith, Buchanan, Ingersoll, Rodewald & Eckert,* for appellee.

OPINION BY MR. JUSTICE JONES, January 4, 1954:

The question in this case is whether a devise of real estate was adeemed by an agreement of sale of the devised property which the testatrix entered into subsequent to the execution of her will. The learned court below, one judge dissenting, held that the agreement did not work an ademption. With that, we agree.

The testatrix's sister and brother (the latter, now deceased, represented by his executor), as the named legatees of the testatrix's personal estate, have appealed, taking a joint appeal, however, in the name of

the sister and the brother's executor. Since their interests are several, a joint appeal was not proper. But, the appeal was taken timely and we shall, under our practice (*Taylor's Estate,* 277 Pa. 518, 522-523, 121 A. 310), enter a non pros as to the appellant fiduciary of the deceased brother and proceed to a disposition of the appeal on its merits as the appeal of the sister alone with an appropriate division of the costs between them. In the circumstances present, this course does not militate against the brother's estate and it does make appellate review of the lower court's decree possible.

The testatrix, Mildred Dublin, a resident of Pittsburgh, died unmarried, leaving to survive her a sister, Marjorie C. Dublin (with whom she lived), and a brother, Alfred S. Dublin. By her will she disposed of her estate as follows: By paragraph 1 she directed payment of her debts; by paragraph 2 she gave her clothing and furnishings to her sister; by paragraph 3 she directed that all of her personal property (other than that disposed of in paragraph 2) be sold and the proceeds, together with any other moneys belonging to her at her decease, divided equally between her brother and sister or the survivor of them; (paragraph 4 we shall pass for the moment); by paragraph 5 she directed that certain yearly payments, amounting to $12,000 per annum, which she was receiving under a settlement agreement with the estate of one John W. Hubbard, deceased, be paid to her attorney, Jason Richardson; and by paragraph 6 she appointed her executors. The bequest to her attorney under paragraph 5, she later revoked by a holographic codicil wherein she named her brother and sister as the legatees of that fund.

The controversy revolves about the meaning of paragraph 4 of the will which reads as follows:

"The real estate I own in Atlantic City which is under agreement of sale, I give, devise and bequeath unto my sister, Marjorie C. Dublin, my brother, Alfred S. Dublin and Jason Richardson, Esquire, or the survivor of them." All three survived the testatrix, although the brother and Mr. Richardson have since died and their interests are represented on the record by their respective personal representatives. The will was drawn by Thomas E. Whitten, Esq., of the Allegheny County bar, from instructions given him by the testatrix, contained for the most part on typewritten sheets of flimsy paper which she had handed to Mr. Whitten. She executed the will in his office on February 26, 1948.

The testatrix owned but a single piece of real estate in Atlantic City which she had purchased in 1940. In 1945 she leased the property to one Joseph E. Kaufman who purported to be acting for a corporation yet to be formed. The lease was for a term of 99 years and included an option in the lessee to purchase the demised premises for $175,000 in the period between January 1, 1949, and January 1, 1969. On April 18, 1949, which was approximately 14 months after the execution of the will, the testatrix contracted to sell her Atlantic City property to one Samuel Bobbins, or his nominee, for $125,000, subject, however, to the existing 99-year lease to Kaufman. The agreement of sale to Bobbins called for closing on or before June 30, 1949, but closing did not take place. Bobbins defaulted. Shortly thereafter, viz., July 22, 1949, the testatrix died; and, on August 9, 1949, her will and codicil were probated before the Register of Wills for Allegheny County, and letters testamentary were granted to the executors named in the will.

On April 14, 1950, the real estate was sold by the testatrix's personal representatives to the Mayfair

Apartments, Inc., the nominee of Bobbins, for $100,-000. In making this sale, the testatrix's executors acted pursuant to a decree, which they had sought, of the Probate Division of the Atlantic County Court of New Jersey which authorized them to carry out the Bobbins agreement at the reduced price. The reduction in the purchase price, having been consented to in advance by the several devisees of the property, received the approval of the New Jersey Probate Court. As the record plainly reveals, Bobbins was acting throughout for Kaufman, the lessee and optionee under the 99-year lease.

The executrix of Richardson's estate contends that the devise under paragraph 4 of the Dublin will was not adeemed and that his estate is, therefore, entitled to one-third of the proceeds resulting from the sale of the Atlantic City property. On the other hand, the sister of the testatrix and the personal representative of her deceased brother contend that the executory contract of sale, entered into by the testatrix with Bobbins on April 18, 1949, worked an equitable conversion of the realty and that, consequently, the specific devise was adeemed. Wherefore, they assert that they alone are entitled to the proceeds of the sale as personalty under paragraph 3 of the will.

The law applicable to the question involved is that of New Jersey, the *lex loci rei sitae*. ". . . [I]t is a principle of private, international law, fortified by a great mass of authority, that all questions relating to the transfer of title to land wherever arising will be governed by the laws of the place where the land is situated: Donaldson v. Phillips, 18 Pa. 170; Lawrence's Est., 136 Pa. 354; Bingham's App., 64 Pa. 345": *Wolfe v. Lewisburg Trust & Safe Deposit Co.*, 305 Pa. 583, 589, 158 A. 567. This principle is applicable to questions relating to the effect of language in

wills of testators not domiciled in the dominant situs. See *Koehler Partition Case,* 360 Pa. 460, 463, 61 A. 2d 870, where we quoted from Restatement, Conflict of Laws, §249, comment (c), to the effect that " 'A will of an interest in land is governed by the law of the state where the land is in spite of a direction in the will to convert the land into personalty.' " Specifically, whether the sale of devised land operates as an ademption is governed by the law of the situs: *Phillips v. Phillips,* 213 Ala. 27, 29, 104 So. 234. See, also, Goodrich, Conflict of Laws, §166, p. 508 (3d Ed.) ; 4 Page, Wills, §1653, p. 732 (3d Ed.).

The law of New Jersey on the subject of ademption is not entirely harmonious. In *Riddle v. Brooks,* 115 N.J. Eq. 1, 169 A. 512, upon which the court below in the instant case laid stress, it was held that an executory contract of sale of specifically devised property did not operate as an ademption. On the other hand, in *Righter v. First Reformed Church of Boonton,* 17 N.J. Super. 407, 86 A. 2d 305, upon which the dissenting judge below relied and quoted from in full, a devise was held to have been adeemed where the testatrix entered into an inter vivos contract to sell the devised property. The *Riddle* case has never since been cited; and there was apparently no contention made in the *Righter* case that the testatrix had not intended an ademption by the contract of sale. We think the law of New Jersey is best expressed in *Donath v. Shaw,* 132 N.J. Eq. 545, 549, 552, 29 A. 2d 555, where Vice Chancellor Berry, after reviewing the whole subject of ademption, declared,—"The rule that the nonexistence of the subject of a legacy evidences its ademption is but a rule of evidence, rebuttable by other evidence indicating that ademption was not intended. That has been the rule of this state for almost a century and a half. . . . It must . . . be considered as the

settled law of this state that the question of ademption is a question of intention." The same rule has been applied in *In Re Armour*, 17 N.J. Super. 523, 530, 86 A. 2d 454, and in *Latorraca v. Latorraca*, 132 N.J. Eq. 40, 43, 26 A. 2d 522. Such was the principle that guided the learned auditing judge in concluding that,—"The only reasonable construction of the language of paragraph 4 of the will of testatrix is that she intended Jason Richardson to be a beneficiary of the property whether it passed as real estate or personalty." Neither of the New Jersey cases cited by the appellant involved an ademption. In both *Horton v. Horton*, 2 N.J. Super. 155, 62 A. 2d 503, and *Courtney v. Hanson*, 3 N.J. 571, 71 A. 2d 192, the question was whether the proceeds from an executory inter vivos contract to sell real estate were realty or personalty,—merely a question of equitable conversion.

The sole inquiry, then, is what did the testatrix intend her named beneficiaries in paragraph 4 of her will to take thereunder. Her words are that "The real estate I own in Atlantic City which is under agreement of sale, I give, devise and bequeath unto my sister, . . . my brother . . . and Jason Richardson . . . or the survivor of them." The testamentary intent is necessarily to be found by the correct construction of the language the testatrix used, bearing in mind that, —"In the construction of a will, the polestar for the court's guidance is the testator's intention": *Fidelity Union Trust Co. v. Ackerman*, 18 N.J. Super. 314, 319-320, 87 A. 2d 47; also, *Lyman Estate*, 366 Pa. 164, 168, 76 A. 2d 633.

At the time the will was executed, the Atlantic City realty was not "under agreement of sale", but it was subject to the 99-year lease (which still had 97 years to run) as well as the option to the lessee to

purchase the property any time during the next 20 years. To the knowledge of the testatrix, there could have been no reasonable probability that any of the named devisees, all adults, would outlive the term of the lease. Consequently, while the gift purported to be a devise of real estate, it was for all patent practical purposes, once the will became operative, nothing other than a gift of the rental income from the property or the proceeds in case the lessee exercised his option to purchase. This conclusion is inescapable if the words, "which is under agreement of sale", are to be given any effect. And, by a cardinal rule of testamentary construction, "all words contained in a will must be given effect so far as possible": *Central Hanover Bank & Trust Co. v. Bruns,* 16 N.J. Super. 199, 209, 84 A. 2d 475, citing *Kutchinski v. Sheffer,* 109 N.J. Eq. 659, 661, 158 A. 499. The phrase "which is under agreement of sale" would be redundant if considered to be descriptive. The testatrix owned only the one parcel of realty in Atlantic City; and it is stipulated in this case that, in conversation, she ordinarily referred to it as "the real estate I own in Atlantic City",—exactly as she adequately described it in her will. The clear import of the phrase is that the testatrix, recognizing that, by giving the option to the lessee, she had relinquished her right to retain the property should the option be exercised, intended that the devisees should receive the proceeds from such sale if the option were exercised.

The lease antedated the execution of the will which plainly recognized the existence of the option to purchase. The testatrix must, therefore, have intended, and have understood, that the devisees should, and would, share in any proceeds resulting from a sale of the property through an exercise of the option. If that be not so, then the devise in the will was but a futile

gesture. The will is not to be construed so as to make the testatrix's language meaningless. No one disputes, or at least can successfully dispute, that, had a sale of the realty been consummated after the testatrix's death, *strictly in accord with the option agreement,* the devisees would have taken the proceeds of the sale in lieu of the devised real estate. In his treatise on Wills at §1519, p. 370, Professor Page states that, "If testator has given an option for value upon land, and then devises it, it is held that such devise passes testator's interest. Accordingly if the option is exercised after testator's death, the devisee takes the purchase price." In the present instance the testatrix devised land which she thought was under an agreement of sale, as in a sense it was to the mind of a layman. The fact that the land was sold under a later agreement does not warrant an inference that the testatrix thereby indicated a change in her donative intent. In making the devise, she obviously contemplated the possibility of a sale of the devised property during her lifetime. By what reasoning, then, is the plain intention of the testatrix to be deemed to be otherwise because the conversion of the realty occurs under an agreement of sale entered into by her subsequent to the execution of her will! It is too manifest for lengthy discussion that the testatrix did not devise realty *qua* realty but the proceeds of realty.

For a still further reason, there was no ademption. Bobbins was in truth Kaufman, the optionee of the 99-year lease. There is, therefore, no more basis for inferring that the testatrix by her agreement of sale with Bobbins meant to void the devise in paragraph 4 of her will than there would have been had Kaufman, the optionee, directly bought the property at the subsequently agreed-upon reduction in price. The occasion for the jockeying and the substitution of Bobbins,

whose ostensible purchase was always subject to Kaufman's 99-year lease with its option to purchase, was to enable Kaufman to acquire the property for the price ultimately paid, viz., $100,000, instead of the $175,000 specified as the price in the option.

The donative words used by the testatrix in paragraph 4 of her will further corroborate that it was her intention to give the beneficiaries named therein, or the survivor of them, her Atlantic City property regardless of whether, at her death, it would be realty or personalty. Only in paragraph 4 did she employ the two words "devise and bequeath". In *Fleck v. Harmstad,* 304 Pa. 302, 308, 155 A. 875, Mr. Justice MAXEY, speaking for this court, said, —" 'Bequeath' is properly applied to gifts by will of personal property, and not realty . . . The term 'devise' is the proper term to be used in a will to denote a gift of real property . . . It is true that the word 'devise' is sometimes used in a will interchangeably with 'bequeath,' . . . nevertheless the fact that the testator . . . used 'bequeath' in paragraph three and 'devise and bequeath' in paragraph four is some evidence that in paragraph three he had in contemplation only personal property, and in paragraph four he had in contemplation real property." Here, the testatrix's use of the technical words, "devise and bequeath", comports with an intent that, whether the property devised in paragraph 4 of her will was realty or the proceeds of realty at her death, it was to go to the beneficiaries named therein or the survivor of them. A testator's choice of language is not to be disregarded, and this is especially so when it accords with the testamentary intent as evidenced by the will as a whole. As was said in *Donath v. Shaw,* supra,—"In construing a will we start with the proposition that the intention of the testator as gathered from the language used is con-

trolling unless contrary to law, or to public policy. . . . That rule should be a constant guide to the end and the intention, if apparent, should control all presumptions and assumptions."

Decree affirmed, one-half of the costs to be paid by Marjorie C. Dublin, the appellee, and the other half by the estate of Alfred S. Dublin, deceased.