Hunlock Township School District, Appellant,
*v.* Northwest Joint School District of Luzerne
County.

Argued January 3, 1955. Before STERN, C. J.,
STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Neville B. Shea,* with him *Shea & Shea,* for appellants.

*John Arnold Crisman,* for appellees.

OPINION BY MR. JUSTICE JONES, February 1, 1955:

The narrow question in this case is whether the purchase of a school site by a joint school district can be accomplished by the favorable vote of two-thirds of the constituent school boards of the joint district. The learned court below decided the question in the affirmative and dismissed the bill seeking an injunction. The plaintiffs have appealed, contending that the favorable vote of each of the constituent school boards of the joint district is required. The material facts are not in dispute, the parties having submitted an agreed statement of facts pursuant to Rule 41 of this court.

On October 30, 1952, the school districts of Fairmount, Hunlock, Huntington and Union Townships and of Shickshinney and New Columbus Boroughs and, later, the district of Salem Township, all districts of the fourth class located in Luzerne County, entered into a jointure agreement for the creation of the Northwest Joint School District of Luzerne County. A majority of the members of each of the constituent boards of directors voted to approve the jointure. The jointure agreement contemplated the continued operation of the existing elementary educational system under the administration and supervision of the joint board and the construction of a new secondary school for the common benefit of the participating districts. Accordingly, the jointure agreement provided, inter alia, that "A new secondary school shall be built by the Joint Board located on a minimum of twenty (20) acres as near the level as would be adequate for good drainage, and as near the geographical center as possible on hard

roads accessible to the participating School Districts, taking into consideration pupil population in order to maintain minimum transportation. The Joint Board shall begin at once to plan for this new secondary building."

On August 4, 1954, the boards of the joint district adopted two resolutions authorizing the purchase of two parcels of land in Union Township as a site for the new school building. The resolutions were approved by a majority of all of the directors and by the affirmative vote of two-thirds of the boards of the component school districts, the vote of a board being determined by a majority vote of its members. The school board of Hunlock Township district voted against both resolutions while a majority of the members of the board of the Union Township school district voted against one of the resolutions but less than a majority of that board voted against the other resolution. Before the purchase of the new school site had been completed, the school district of Hunlock Township and one Stanley Croop, a taxpayer of that district, filed a bill in equity in the court below against the joint school district and the constituent districts, seeking to restrain the purchase on the ground, inter alia, that the resolution of the boards of the joint district authorizing the purchase had not received an affirmative vote of each of the boards of the constituent districts. The defendants answered and asserted that an affirmative vote by the boards of two-thirds of the constituent districts was sufficient. Thereafter, three other taxpayers from the Fairmount, Huntington and Union Township school districts, respectively, were permitted to intervene as parties plaintiff. The matter came on for a hearing and on October 6, 1954, the chancellor filed an adjudication wherein he found the relevant facts from which he drew appropriate conclu-

sions of law and entered a decree *nisi* dismissing the bill. Exceptions to the decree *nisi* were thereafter overruled by the court en banc which entered a final decree dismissing the bill at the plaintiffs' costs.

From the decree so entered, all of the parties plaintiff have taken this one appeal as if their interests were joint. The indirect interest of the taxpayers is not the same as the direct interest of the plaintiff school district. However, as the appeal was taken timely, we shall, under recognized practice, enter a *non pros* as to the individual plaintiffs and proceed to a disposition of the appeal on its merits as the appeal of Hunlock Township school district alone: see *Dublin Estate*, 375 Pa. 599, 600-601, 101 A. 2d 731. That course will not militate against the interest of any of the parties and it does permit the decree of the court below to come before us properly for review.

The answer to the question here involved is to be found in the plain language of Section 1704 of the Public School Code of 1949, P. L. 30, as amended by Section 1 of the Act of June 28, 1951, P. L. 934, 24 PS §17-1704, which provides as follows: "The affairs of joint schools or departments shall be supervised and directed (1) jointly by the several boards of school directors, establishing and maintaining such joint schools or departments, or (2) by a joint school committee . . . . When there is no joint school committee, the several boards of school directors are hereby authorized to meet jointly, and exercise the same power and authority over the same as the several boards exercise over the schools in their respective districts. Whatever matter is required by law to be decided by a vote of the majority of all the directors of a school district shall in a joint school or department be required to be decided by a vote of two-thirds of all the constituent boards comprising said joint operation. The vote of

any constituent board shall be determined by a majority vote of all the school directors comprising such constituent board. In addition thereto, the matter shall have been voted for by a majority of all the school directors of all of the constituent boards. . . ."

The matters required by law to be decided by a vote of a majority of all of the directors of a school district are set forth in Section 508 of the Public School Code of 1949, as amended by Section 1 of the Act of May 10, 1951, P. L. 287, and by Section 1 of the Act of September 28, 1951, P. L. 1546, 24 PS §5-508. Among such matters is "Purchasing, selling, or condemning land." It is evident, therefore, that in authorizing the purchase by the joint district of the properties involved all that was required was a two-thirds affirmative vote of the boards of the constituent districts of the joint district. And, that requirement was met. Each of the resolutions was adopted by the affirmative vote of two-thirds of the boards of the constituent districts and, in addition, by a majority vote of all of the directors of the boards of the district as required by Section 1704.

Prior to the 1951 amendment of Section 1704 of the Public School Code of 1949, matters required by law to be decided by a majority vote of all of the directors of a school district were also required to be decided, in the case of a joint school district, "by a majority of all the directors in *each* district" (Emphasis supplied). The consequent inflexibility of operation and the possibility of unreasonable and arbitrary minority obstruction to which joint schools were thus subjected by the requirement of an affirmative vote by each of the boards of the constituent school districts is too obvious to require extended discussion. Indeed, the very evident purpose of the 1951 amendment of Section 1704 was to relax the existing rigidity of operation by au-

thorizing a joint school district to act in appropriate cases with the concurrence of not less than two-thirds of the boards of the constituent districts.

However, the appellant makes reference to certain provisions in Section 1701 of the Public School Code of 1949, as amended by Section 12 of the Act of July 27, 1953, P. L. 629, 24 PS §17-1701, and argues therefrom that the approval of each of the constituent boards of the joint district was a *sine qua non* to the legal efficacy of the resolutions of purchase. The particular provision in Section 1701 to which the appellant points has to do with the requirements for the entry of two or more school districts into a jointure. Of course, no school district could rightly be forced into a jointure against the majority vote of its board of directors. Consequently, Section 1701 very properly provided, inter alia, that "No joint school or department shall be established without the approval of the county board of school directors and of the Department of Public Instruction or without receiving the affirmative vote of a majority of the members of the board of school directors in each district establishing the same." As the agreed facts show, the jointure in the instant case came into being in October, 1952, by a majority vote of the directors in *each* of the constituent districts. But, the appellant argues that the purchase of a site and the erection of a new school building thereon constitutes the establishment of a new school. The fallacy inherent in this argument is at once apparent. The appellant confuses the creation of a jointure with the purchase of a site and the construction of a new school building. The appellant's remaining contentions are equally lacking in merit.

In *Walker's Appeal*, 332 Pa. 488, 492, 2 A. 2d 770, Mr. Chief Justice KEPHART observed for this court that "For successful operation of these joint schools it is

provided that the old districts' control be transferred to a joint board, with joint though separate control in the districts. This new organization is a distinct separate legal entity from each of the district boards which make it up." And, further, "The fundamental public policy, expressed in the Constitution and underlying school laws, is to obtain a better education for the children of the Commonwealth." However, if, as the appellant argues, Section 1701 of the Code requires the board of each constituent district to approve the purchase of a site for a joint school, not only is each board therewith invested with an absolute power of veto over the operation of a joint school but the 1951 amendment of Section 1704 of the Code (which was designed to secure flexibility of operation by permitting action by the concurrence of the boards of two-thirds of the constituent districts) is emasculated and the objective of a better education for the children of the Commonwealth disregarded. Fortunately, the Code does not so require as the language of Section 1701 itself confirms. The inhibition that a joint school shall not be established without the approval of each of the component districts specifically refers only to the *establishment* of the joint school and not to the construction or maintenance of a school building. Section 1701 provides in part that one or more districts may "establish, construct, equip, furnish, and maintain" joint schools but that "No joint school or department shall be *established* without . . . receiving the affirmative vote of a majority of the members of the board of school directors in each district *establishing* the same" (Emphasis supplied). Patently, the appellant mistakenly treats as synonymous the functioning educational body and the physical buildings which it uses for the furtherance of its purposes.

The decree is affirmed at the appellant's costs.